JOSEPH CLAYTON v. A. J. HESTER.

*Contract—Conditional Sale—Registration.*

An instrument under seal in the following words : I promise to pay J.
C. the sum of $150 for one bay horse, "and to secure him, the horse
stands his own security;" *Held* to be a conditional sale and not a
mortgage, and not void for want of registration.

(*Ellison* v. *Jones*, 4 Ire., 48; *Gaither* v. *Teague*, 7 Ire., 460; *Ballew* v.
*Sudderth*, 10 Ire., 176 ; *Parris* v. *Roberts*, 12 Ire., 268, cited and ap-
proved. *Deal* v. *Palmer*, 72 N. C., 582, modified.)

CIVIL ACTION tried at Spring Term, 1878, of PERSON Supe-
rior Court, before *McKoy, J.*

The facts are stated by THE CHIEF JUSTICE.   Verdict and
judgment for plaintiff.   Appeal by the defendant.

*Messrs. E. G. Haywood* and *A. W. Tourgee,* for plaintiff.
*Messrs. Merrimon, Fuller & Ashe,* for defendant.

SMITH, C. J.   The plaintiff claims title to the horse, for
the recovery of which the action is brought, under a con-
tract of purchase from one B. V. Riggs to whom he alleges
the plaintiff had previously sold the horse.   On the trial the
following paper writing was exhibited in evidence :

$150.00.   One day after date I promise to pay to Joseph
Clayton the full and just sum of one hundred and fifty dol-
lars for one bay horse bought of him, and to secure him the
horse stands his own security.   Witness my hand and seal
this the 29th of March, 1873, (signed) B. V. Riggs [seal] and
witnessed by W. A. Mebane.

The plaintiff as a witness on his own behalf testified that
the contract was in contemplation of the parties at the time
of making it, a conditional sale; and there was no evidence
conflicting with this statement.

The defendant asked the court to instruct the jury that the contract was in law a lien or mortgage, and as against the defendant a purchaser for value, void for want of registration. The court declined to give the instruction, and charged the jury that upon the evidence it was a conditional sale only.

There are several cases in our reports where the court has been called on to put a construction upon instruments very similar to this. We will briefly refer to them. In *Ellison v. Jones,* 4 Ire. 48, the note was in these words: "Five months after date I promise to pay Henry Ellison the sum of fifty dollars for a horse, said horse to be said Henry Ellison's till paid for," and it was held to be a conditional sale. In *Gaither* v. *Teague,* 7 Ire. 460, a bond was given as follows: "Know all men by these presents that I, Edward Teague have this day bargained for a sorrell filly with W. Gaither, which I want to stand as security until I pay him for her. I also promise to take good care of her." Parol evidence was given of the transaction, and the court charged the jury that the instrument was not upon its face a mortgage, but if Gaither transferred the property in the filly to Teague, and that *afterwards they came to an agreement* to secure the price and for this purpose *Teague made the instrument,* it would be deemed a mortgage and void. The jury found for the plaintiff and this court approved the charge, and RUFFIN, C. J., delivering the opinion says: "Under the circumstances of the case this court is of opinion that His Honor was right in so holding and in leaving it to the jury to determine its character as they might find the facts, whether it was given *at the instance of Teague* or *before or after* the sale had been completed by a contract and delivery."

In *Ballew* v. *Sudderth,* 10 Ire., 176, at the foot of the note were appended these words: "It is agreed and understood that a sorrel mare for which the above note is given is to remain the property of P. Ballew until said note is fully paid."

CLAYTON *v.* HESTER.

"We concur with His Honor," says PEARSON, J., "that the bill of sale was not a mortgage, but a sale to take effect if the price was paid."

In *Parris* v. *Roberts*, 12 Ire., 268, the words were these: "This day sold to W. D. Jones one gray filly for one hundred and fifteen bushels of corn which the said filly stands to the said Daniel Parris as his own right and property until she is paid for." The jury were charged that by a proper construction of the writing, the property in the horse remained in the plaintiff, and on the appeal, NASH, J., says: "In the charge of His Honor there is no error."

The law would thus seem to have been settled by these concurring authorities, until in *Deal* v. *Palmer*, 72 N. C., 582, a different legal effect was given to words very similar, contained in a note for the purchase money of a mule, to-wit: "The mule to stand security for the price until paid for." In delivering the opinion and after referring to Teague's case, PEARSON, C. J., says: "Here the words of the instrument admit of no question. It was the intention of the parties, and the legal effect of the instrument is to make a sale of the mule with a mortgage to secure the price." We are thus compelled to decide whether we will walk in the well trodden path of former adjudications, or sanction and follow the new departure from it. We prefer to stand "*super vias antiquas*," and in our opinion these adjudications rest upon sound and correct principles of interpretation. It will be noticed that in all the cases, the instrument is executed by the alleged vendee only, and contains his contract with a recognition of the rights of the vendor. It does not profess in terms to reconvey; nor are there any words from which such intent can be inferred. It does not undertake to set out the entire transaction, but the contract only of one of the parties to it, and the terms on which the possession of the property is acquired and held. It may furnish some evidence of an antecedent sale, but is not itself the contract

of sale. For this reason the jury were directed in Teague's case to enquire and ascertain if in fact there had been a sale and the writing was its counterpart, and upon their finding there was none, the deed is declared to be evidence of a conditional sale. In our case, not only is the proof necessary to convert the instrument into a mortgage wanting, but the proof is positive and direct that the parties understood and intended a conditional sale, and that the title to the horse should not vest until the purchase money was paid.

The essential rule governing in the interpretation of contracts is to give them a meaning which carries the common intent into effect, and a construction is never allowed to defeat the purpose when the words employed can be reasonably understood in a different sense. Let us apply the rule to the present instrument. It is quite apparent the parties intended the owner should retain the property while possession was transferred until the price was paid, or in other words as a security for it. This is affected and can only be affected by leaving title in the plaintiff until the condition is accomplished. The writing declares that "the horse stands his own security," by which is plainly meant that the *property* in the horse should "stand," *remain undisturbed,* in the owner as his security, a security incident to his retaining title, until the money specified in the note was paid. This reasonable construction of the words of the writing obviates all difficulty and accomplishes the end that both intended. It cannot be supposed that the plaintiff would transfer his property merely to take it back as a mortgage, when there was no necessity for it, and the means of security were in his own hands. Nor do the facts require us to separate a single transaction into parts, and thus destroy that security. The maxim *res magis valeat quam pereat* should prevail.

Let us suppose the position of the parties to be reversed, and that a writing had been executed by the plaintiff and

delivered to Riggs, containing this or similar language: "I have sold to B. V. Riggs a bay horse for one hundred and fifty dollars, and the horse is to stand as my security for the debt." Would not the intent be clear, and the legal operation of the instrument be to *leave the property in the plaintiff*, notwithstanding a change of possession, until payment was made and then transfer it to Riggs? Can any good reason be assigned why the writing given by Riggs should not bear the same construction and be allowed the same effect? The difference between them is only this: In the one case the *writing itself constitutes the contract of sale* and puts the restriction on the transfer, so that only a qualified property passes. In the other, it is the evidence and recognition of the transaction and of the terms on which the horse is held. The legal consequences should be the same whether the writing be given by the one or the other, as the contract is the same.

But it is suggested that such instruments contravene the spirit and policy of the registry laws, and as tending to encourage fraud and unfair dealings ought not to be encouraged. We do not feel the force of the objection. There is no law requiring transfers of personal property except deeds in trust and mortgages to be registered, and the principle *caveat emptor* applies to all who may deal with those in possession. The purchaser must look to his vendor's title, since while possession is evidence of ownership it is presumptive only, and the fact may be otherwise. The possession may be a bailment or permission by the owner, or under a contract of conditional sale. The vendee must enquire and satisfy himself or take adequate indemnity against loss. The owner's right to make a contingent or conditional disposition of his personal estate, not contravening the law in regard to trusts and mortgages, stands upon the same basis as a bailment or permissive use and possession.

Neither the letter nor spirit of the registry laws is invaded in holding that the plaintiff has never parted with his title to the horse.

No error.                             Affirmed.