FRICK & CO. v. LOUIS HILLIARD.

*Conditional Sale—Mortgage—Lien.*

1. In order to constitute a conditional sale, it is essential that the title to the property should remain in the vendor, for there can be no conditional sale, if the title is transferred to the vendee.

2. A lien is a right by which a person is entitled to obtain satisfaction of a debt, by means of property belonging to the person indebted to him.

3. No particular words of conveyance are necessary to make a mortgage of personal property.

4. Where a note given for the purchase of an engine and boiler, provided that it should be a lien upon the property sold for which it was given, until it was paid in full at maturity, at which time the engine and boiler should be at the disposal of the vendors, which note was never registered, *It was held,* not to be a conditional sale, and that a party who had purchased the engine and boiler from the vendee before the note was paid, without notice, took it discharged of any claim of the original vendors.

(*Ellison* v. *Jones,* 4 Ired., 48; *Ballard* v. *Sudderth,* 11 Ired., 176; *Paris* v. *Roberts,* 12 Ired., 268; *Vasser* v. *Baxter,* 86 N. C., 335; *Gaither* v. *Teague,* 7 Ired., 460; *Clayton* v. *Hester,* 80 N. C., 275, cited and approved. *Deal* v. *Palmer,* 72 N. C., 584, doubted).

This was a CIVIL ACTION, tried before *Shepherd, Judge,* and a jury, at Spring Term, 1886, of HALIFAX Superior Court, upon the following case agreed, to-wit:

1. That some time in April, 1878, the plaintiffs, who are manufacturers of machinery, boilers, engines, etc., agreed to sell unto one L. G. Estes, and his wife, Julia W. Estes, residing in the county of Edgecombe, North Carolina, at a price agreed on between them, and on the terms and stipulations contained in the notes, hereinafter set out, one 12 horse power "Eclipse" engine and boiler, manufactured by the plaintiffs, and Estes and wife executed and delivered their notes to the plaintiffs therefor, due and payable at divers times thereafter, the last of which was in the following words and figures:

"$322.97.                    ENFIELD, N. C., April 1st, 1878.

Twenty-four months after date, we, severally and jointly, promise to pay Frick & Co., or order, the sum of three hundred

and twenty-two dollars and ninety-seven cents, without defalcation, value received. We, the drawers and endorsers of this note, hereby waive presentment for payment and notice of protest for non-payment of same, and also waive all homestead and exemption laws as to this debt.

"It is also further understood and agreed, that this note shall be a lien upon the engine, boiler or other machinery for which it is given in payment, until this note is paid in full, with legal rate per centum from maturity, together with all reasonable attorney's fees for collecting, and all necessary expenses incurred, if not paid at maturity, at which time, said engine, boiler or other machinery, shall be at the disposal of said Frick & Co., or order, and for deficit, hold ourselves equally responsible until paid in full."

The other notes were in the same form, and none of them were registered. Thereupon, the engine and boiler were delivered to Estes and wife, who were then and still are insolvent.

2. That default was made in the payment of a balance on the note hereinbefore set out, and on the 27th day of February, 1883, the plaintiffs began an action in the Superior Court of Halifax, returnable to Spring Term of said Court, against Estes and wife, to subject the engine to the payment of the debt; and at Fall Term, 1883, judgment was rendered in favor of the plaintiffs, for the balance due on the note, $134.60, with interest on $109.60 from the 24th day of October, 1883, till paid, and $6.32 costs, and it was ordered by the Court, that the engine should be sold by the Sheriff, to pay off the balance due thereon. The Sheriff, to whom said order issued, returned that the engine could not be found in his county, and the plaintiffs have no means of making their debt, other than this action.

3. That on the 1st day of February, 1883, L. G. Estes, in Tarboro, sold said engine to the defendant, Louis Hilliard, who had no personal notice of plaintiffs' claim for $750.00, which amount was not paid in money, but was entered as a credit, as

soon as Hilliard returned to Norfolk, on an antecedent debt due him by Estes. Hilliard did not agree with Estes, that he should retain possession till the Fall, but the engine was not delivered to him until the 30th of October, 1883; but it was subject to his order, and he did not remove it, because he could not find a purchaser, and he did remove it as soon as he did find one.

4. The engine is worth $750.00, and defendant has converted it to his own use, and after demand made upon him prior to the beginning of this action, refused, and still refuses, to pay plaintiffs' claim.

Upon these facts, the Court gave judgment in favor of the defendant, from which the plaintiffs appealed.

*Messrs. R. O. Burton, Jr.*, and *Spier Whitaker*, for the plaintiffs.

*Mr. W. H. Day*, for the defendant.

ASHE, J. (after stating the facts). We have had a good many cases before this Court, involving questions like that presented by the record in this case, and there has been some conflict in these decisions, which we find it difficult to reconcile. There seems to be a distinction recognized by this Court, where a note is given for the price of personal property purchased, and there is in the note a stipulation that the property which is the subject of the contract, shall be a security for the payment of the note, whether the title of the property is retained by the vendor, or parted with, by the terms of the contract. In the former case, it has been uniformly held, that the transaction is a conditional sale, but otherwise, when the title has passed to the vendee.

In the following cases, the transactions have been held to be conditional sales, and not mortgages, because there was a stipulation in the contracts, that the property, or the title thereto, should remain in the vendor until the price was paid. *Ellison* v. *Jones*, 4 Ired., 48; *Ballard* v. *Sudderth*, 11 Ired., 176; *Paris* v. *Roberts*, 12 Ired., 268; *Vasser* v. *Baxter*, 86 N. C., 335.

In *Gaither* v. *Teague*, 7 Ired., 460, the action was founded upon the following instrument: "Know all men by these presents, that I, Edward Teague, have this day bargained for a sorrel filly, with W. Gaither, which filly I want to stand as security until I pay him for her. I also promise to take good care of her." It was held, that upon the face of the paper, it was doubtful whether it was intended as a mortgage or a conditional sale, and it was properly left to the jury to determine its character from the accompanying circumstances. And it was held upon their finding, to be a conditional sale. But in *Deal* v. *Palmer*, 72 N. C., 584; where the construction of an instrument was involved, which was in the following words: "Six months after date, I promise to pay H. M., or order, forty dollars, the price of one mule colt, *bought of her*, the mule to stand security for the price until paid;" it was held to be a mortgage and not a conditional sale. PEARSON, C. J., who delivered the opinion of the Court, said, referring to the case of *Gaither* v. *Teague*, which was somewhat similar in its wording, that "after much deliberation, it was held not to be evidence of a sale, and mortgage to secure the price, but only of an executory agreement to sell; here the words of the agreement admit of no question—it was the intention of the parties, and the legal effect of the instrument is, to make a sale of the mule, with a mortgage to secure the price." It will be observed, that the dissimilarity of these two cases consists in the wording of the instruments. In *Gaither* v. *Teague*, the wording is, that the vendee has *bargained* for a sorrel filly, and in the last case, the wording is, ' *one mule colt bought of her.*' "

In the more recent case of *Clayton* v. *Hester*, 80 N. C., 275, where the instrument offered in evidence of the contract, was, "One day after date, I promise to pay to J. C., the full and just sum of one hundred and fifty dollars, for one bay mare bought of him, and to secure him, *the horse stands his own security ;*" and it was held to be a conditional sale, and not a mortgage. This decision would seem to be in conflict with that in *Deal* v. *Palmer*, for there is scarcely a shade of difference in the words of

the instruments. In the one case, the words are, "the mule to stand security for the price until paid," and in the other, "to secure him, the horse stands his own security." But conceding that *Deal* v. *Palmer* is overruled by this last cited case, yet it will be seen, that it was held to be a conditional sale, because the title to the property still remained in the vendor. For the Chief Justice, who spoke for the Court, said, "It is quite apparent the parties intended the owner should retain the property, while possession was transferred, until the price was paid, or in other words, as a security for it. This is effected, and can only be effected, by having title in the plaintiff until the condition is accomplished. The writing declares, that "the horse stands his own security," by which is plainly meant, that the property in the horse should stand, *remain undisturbed*, in the owner, as his security, a security incident to his retaining title, until the money was paid."

If it is held, as in this and other cases, that the retention of the title to the property is essential to constitute a conditional sale, the converse of that proposition must be true, that if the title is parted with to the vendee, it cannot be a conditional sale, and that is what distinguishes the case before us from those cited.

In this case, the possession of the property was transferred to the vendees, and the instrument taken to secure the price of the articles sold, was substantially as follows: After the stipulation for the price to be paid for the property purchased, it contains the following agreement: "It is also further understood and agreed, that this note shall be a lien upon the engine, boiler, or other machinery for which it is given in payment, until this note is paid in full, with legal rate, &c., and all necessary expenses incurred, if not paid at maturity, at which time said engine, boiler, or other machinery, shall be at the disposal of said Frick & Co., or order."

The instrument bears intrinsic evidence of a sale, and the transfer of the legal title. It gives a lien on the property purchased, for the payment of the note given for the price, and the plaintiffs accept the instrument. In other words, he parts with

the property, and consents to take a lien thereon, as a security for the purchase money.    The lien is inconsistent with the retention of the title to the property, for a person does not take a lien upon his own property.    A lien is a right by which a person is entitled to obtain satisfaction of a debt, by means of property belonging to the person indebted to him.

The title, then, not being retained by the plaintiffs, the transaction with the defendant, cannot be a conditional sale, but as there is a lien given in the written contract, by the defendant to the plaintiffs, upon the property purchased, to secure the price agreed to be paid, therefore it follows that it must be a mortgage.

No particular words are necessary to create a mortgage.    In *Langdon* v. *Bull*, 9 Wend., 80, where the action was founded upon an instrument very similar to this, which ran thus : " Now therefore, for the payment of the said notes, I hereby pledge and give a lien on the said engine, to the said Langdon, and in case the notes are not paid, hereby consent that Langdon shall hold the same as security, and see himself harmless, it being understood that I keep possession of the same until the time comes for the payment of the notes, and in case they are not paid, Langdon may take the same." This was held to be a good mortgage, and it will be seen in its terms, to bear a striking similarity to the instrument under consideration.

We think it very clear, that the instrument is a mortgage, and there was no error in the judgment of the Superior Court in favor of the defendant upon the case agreed.    The judgment of the Superior Court is therefore affirmed.

No error.                                        Affirmed.