GEORGE KENDRICK v. FREDERICK A. BEARD.

*Conditional sale—Written instrument—Parol evidence.*

The following clause in a note given in part payment for a span of horses, immediately following the statement of the sum agreed to be paid, namely, "being balance due on one span of horses bought of him [the payee], said horses to be holden to him as security for payment of this note," is not so certain and unambiguous as to import a mortgage and not a conditional sale, and parol evidence that the title to the team was not to pass until they were paid for is admissible as explanatory of the doubtful language.

Error to St. Clair. (Canfield, J.) Argued May 2, 1890. Decided June 6, 1890.

Trover. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Stevens & Merriam,* for appellant.

*Avery, Jenks & Avery,* for defendant.

MORSE, J. The plaintiff sues in trover for the value of one span of horses.

In 1884 he was the owner of the horses, and had been

working with them for one David Beard, a brother of the defendant. On February 5 in that year he sold the horses to said David Beard for $300, receiving $30 in cash, and the following instrument, in payment of the same:

"CAMP, HUNT CREEK, MICH., February 5, 1884.
"On the first. day of April next I promise to pay to George Kendrick the sum of two hundred and seventy dollars, being balance due on one span of horses bought of him, said horses to be holden to him as security for payment of this note.        DAVID BEARD."

Upon this note were three indorsements, amounting in all to $70. No other payments were ever made upon the note.

David Beard turned these horses out to his brother, the defendant, upon a chattel-mortgage debt he was owing him. January 19, 1885, while the horses were in the possession of defendant, plaintiff sent two men to see him, who read the note to him, and demanded the horses for plaintiff. Defendant refused to give them up, and subsequently sold them, in 1886. Defendant, at the time he took the horses upon the debt of his brother to him, did not know of. the existence of this note, or that the plaintiff had, or claimed to have, any interest in the team. He first learned of plaintiff's claim when the demand was made, and that was the first knowledge he had of the note. The judge of the circuit court for St. Clair county, in which the suit was tried, directed the jury to find for the defendant, which they did, and judgment was entered accordingly.

The plaintiff claims that the note or instrument, as it reads, indicates that the transaction between the parties and agreement was that the title to the horses should remain in the plaintiff until they were paid for; but that, in order to fully understand and construe the contract, parol proof must be resorted to, to show the circum-

stances of its execution and the intent of the parties. Acting upon this theory, the plaintiff testified that David Beard told him that this paper, the note, would hold the horses until they were paid for, and that they would be in plaintiff's charge until paid for, but the possession of the horses was at once given to said Beard, who took them, and afterwards used them as his own; that when the bargain was made, and before the execution of the note, said David Beard said he would give plaintiff "a paper holding the horses until they were paid for." On cross-examination he further testified that, when he asked Beard for money,—

"He said he hadn't any, but, he said, as long as I had the horses, that was good enough.

"Q. Did he say, 'You have the horses as security?'

"A. Yes, sir.

"Q. When you agreed to sell the horses to Mr. Beard, did you say anything to him about security?

"A. Yes, sir; I told him I would like to have some security. I wouldn't want to leave the horses there without any. He said he would write me up a paper to that effect. He said we both lived down here, and he would be down here and straighten up, and he wrote up the paper that has been referred to, and gave it to me.

"Q. You accepted that, did you?"

"A. Yes, sir."

Upon redirect examination, witness testified as follows:

"Q. Mr. Jenks asked you the question, if Mr. Beard told you 'you held the horses in security,'—did he use that expression, or did he use the expression, 'The horses were yours?'

"A. He told me the horses were mine until they were paid for.

"Q. Was that substantially the same conversation that took place between you and him up in the woods?

"A. Yes, sir."

This was all the testimony given by the plaintiff to support his claim that the title of the horses was to remain in him until paid for.

The defendant called David Beard, the maker of the note, who testified that there was no talk between them about the title remaining in plaintiff, and that plaintiff requested no security of any kind, and there was no agreement as to the horses being security more than the note called for. The circuit judge ruled, in effect, that the contract did not show a conditional sale; that it was perfect and complete upon its face, and parol testimony could not be introduced to vary or change its terms.

I think the court erred in his construction of the contract, as shown in the note. The words,—

"Said horses to be holden to him as security for payment of this note,"—

Are not so certain and unambiguous as to import a mortgage and not a conditional sale. If the clause had read " by him " instead of " to him," there would have been no doubt but that the parties intended plaintiff should retain the title to the horses until they were paid for. And as the contract now reads, it seems to me that there is as good reason for construing the note as evidence of a conditional sale as of a mortgage. But it is evident that the note is not the whole of the contract of sale between the parties, and therefore parol evidence is admissible to show what the real agreement of sale was. And the parol testimony of the plaintiff that the title of the team was not to pass until they were paid for in full does not vary or change the terms of the note, but, at most, only explains the doubtful language, and gives the whole contract of which this writing was a part.

The note does not undertake to set out the entire transaction between the parties, but the contract of only one of the parties to it, and the terms on which the possession of the property is acquired and held. " It may furnish some evidence of an antecedent sale, but is not

itself the contract of sale." See *Clayton v. Hester*, 80 N.
C. 275; *Gushee v. Robinson*, 40 Me. 412. The court should
have submitted to the jury the parol testimony concern-
ing the contract of sale, and it was for them, under all
the testimony, to find the intention of the parties,—
whether it was intended that the title should pass at
once to David Beard with the possession of the team, or
whether it was to be retained in the plaintiff until the
full purchase price of the horses were paid.

The judgment must be reversed, and a new trial
granted, with costs of this Court to plaintiff.

The other Justices concurred.