TAYLOR v. APPLEBAUM.[1]

1. SALES—CONDITIONAL SALES—PAYMENT—APPLICATION—PASSING TITLE.

Where the notes given for the purchase price of machinery, sold on a contract of conditional sale, included the amount of a previous indebtedness, payment of an amount exceeding the price of the new machinery did not confer title on the buyer, where he did not designate the application of the payments, and the seller applied them, so far as necessary, on the old indebtedness.

2. SAME—PASSING TITLE—EVIDENCE.

On the issue whether the title to machinery passed from seller to buyer at the time of its delivery and the execution of a lease thereof containing an option to purchase reserving title in the seller, notes for the rent and purchase price, including a previous indebtedness, and a statement of account receipted as having been paid by notes, evidence examined, and *held*, that title did not pass and that the evidence did not justify submission of the question to the jury.

3. SAME—BONA FIDE PURCHASER.

Where the instrument under which a lessee had possession of chattels was at most a contract for sale, under which the lessor retained title until the purchase price should be paid, a purchaser from such lessee acquired no title as against the lessor, though he had no notice of the lessor's rights.

Error to Wayne; Rohnert, J. Submitted October 13, 1908. (Docket No. 52.) Decided November 30, 1908.

Trover by J. E. Paul Taylor, administrator of the estate of Arthur C. Lloyd, deceased, against Isaac Applebaum. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Corliss, Leete & Joslyn,* for appellant.

*Alex. J. Groesbeck,* for appellee.

[1]Rehearing denied March 3, 1909.

HOOKER, J. On February 24, 1903, one George Currie, being owner of certain scows and other property, made a chattel mortgage of the same to one Arthur C. Lloyd to secure a note of $1,800 and any other sums that might be owing to him. On March 27, 1905, Currie executed the following instrument; the same apparently having been written upon said mortgage:

"DETROIT, MICH., March 27, 1905.

"Whereas the chattels herein enumerated have largely depreciated in value from that appraised at the time this sale was made; and whereas, I am not now able to pay the note for $1,800 for which the chattels herein enumerated are pledged: Now, therefore, in consideration of the cancellation, surrender and return to me of the said note for $1,800, the receipt whereof I hereby acknowledge, I hereby absolutely sell and convey to Arthur C. Lloyd, all my right, title and interest to all the property herein and authorize him to take immediate possession thereof.

[Signed]        "GEORGE E. CURRIE.

"Witness:

"ERNEST F. LLOYD."

On October 15, 1903, Currie negotiated with Applebaum for an engine and boiler, and the result of such negotiation appears from certain writing, and the oral testimony given by Currie, who was a witness for the plaintiff. Currie acquired possession of said engine and boiler, and substituted them for those on one of the scows. The writings referred to consist of a written lease of the engine and boiler, four promissory notes and a statement; all being dated October 15, 1903.

The lease was in terms following:

"This agreement made this 15th day of October, 1903, between Isaac Applebaum, of Detroit, party of the first part, and George E. Currie, of the same place, of the second part, as follows, to wit: The first party agrees to let and lease to the said party of the second part a certain Raw's & Morrison De La Vergue 8¼x10 hoisting engine, boiler and fixtures complete for the term of four (4) months from the date hereof, at a rental of $500. The first party further agrees to, and does hereby give to said

second party, the option and privilege of buying said machine, at the expiration of the said four months, from this date, for the sum of eleven hundred and twenty-five dollars ($1,125), but it is agreed that the rental price of five hundred dollars shall then apply on said purchase price, and then shall be due and payable to the party of the first part the sum of six hundred and twenty-five dollars. The party of the second part agrees to the above terms and in consideration of the use of said engines and equipment for four months agrees to pay the sum of five hundred dollars to the first party, and for that purpose has this day executed to the said party of the first part a note for the sum of five hundred dollars, payable in thirty days from the date hereof, with interest at the rate of six per cent. and if same is not paid when due the party of the first part shall be entitled to an immediate return of said engine and equipment without legal process, together with the rental therefor. The party of the second part further agrees that, if at the end of the said four months he desires to exercise his option of buying said engine as aforesaid, he will pay the said party of the first part the sum of six hundred and twenty-five dollars in addition to the rental of five hundred dollars above agreed upon. The second party further agrees and understands that the property herein mentioned at all times is owned by the first party until the second party has exercised this option and receives a proper bill of sale therefor, and further agrees that if he does not exercise his option at the end of the said four months he will return and deliver to the first party's warehouse the engine, boiler and fixtures complete in as good condition and repair as when he received same, and will at all times keep the said engine and equipment in first class condition and repair during the term of this lease and while same is in his possession.

"In witness whereof the parties have this 15th day of October, 1903, subscribed their names and seals.

[Signed]   "GEORGE E. CURRIE.<br>"I. APPLEBAUM.

"Witnessed by:
    "JAKE ROTH.
    "DAISY L. BOWERMAN."

Four notes were given, one for $500, and three for $481.37 each. A copy of one will answer for all:

"500.00                    DETROIT, MICH., Oct. 15, 1903.

"Thirty days after date, I promise to pay to Isaac Applebaum or order five hundred & no ∕ 100 dollars at Detroit Savings Bank.    Value received.    6% interest.

[Signed]    "GEORGE E. CURRIE.

"[Memo. in margin] As per lease executed 15th day of October, 1903."

The defendant insists that the title to the engine and boiler have at all times remained in him as indicated by the provisions of the lease, while the plaintiff claims that the lease was abrogated by what occurred after it was made, and that title thereupon vested in him.   His position is that the testimony of Currie shows this, and therefore that the court erred in taking that question from the jury and directing a verdict for defendant.   It becomes necessary to determine whether there is testimony from which such a conclusion can be legitimately inferred. We therefore insert that portion of his testimony which refers to the subject.

Direct examination.·

"*Q.* From whom did you purchase that boiler and engine?

"*A.* From Mr. Applebaum.

"*Q.* When did you buy it ?

"*A.* October 15, 1903.

"*Q.* You have had business relations with Mr. Applebaum before that time ?

"*A.* Yes; covering a great period of time.

"*Q.* October 15, 1903, you bought this boiler and engine of Mr. Applebaum ?

"*A.* Yes, sir.

"*Q.* At that time were you indebted to him ?

"*A.* I was indebted to him over $800 apart from the purchase of the boiler and engine.

"*Q.* What was the price paid Mr. Applebaum October 15, 1903, for this boiler and engine ?

"*A.* $1,125.

"*Q.* How did you pay for that ?

"*A.* In notes.

"*Q.* Did you embrace in the notes given at that time your former indebtedness to him ?

"*A.* I did.   At the time I purchased this boiler and

engine from Mr. Applebaum, I was owing him $819, I believe. The first agreement was a lease of some boiler with the option of purchase. When the bargain was consummated, the notes were given in payment for the engine. * * *

"Q. What was the next step taken after the execution of this lease with reference to this boiler and engine?

"A. I gave Mr. Applebaum four notes, one for $500 and three for $481 each.

"Q. And embracing what?

"A. Embracing my indebtedness to him on the purchase of this boiler and engine. I took his receipts for the notes."

The following writing is the receipt referred to and was Exhibit D:

"Main 1836.                     Statement.
                    "Detroit, Mich. Oct. 15, 1903.
"Mr. Geo. E. Currie, City.
"In account with
                "Isaac Applebaum,
                "Wholesale Dealer in
"Scrap Iron and Metals, Machinery and Belting,
            "38 and 40 Randolph Street.

| | |
|---|---|
| "Balance to date | $819 13 |
| By notes | 1,125 00 |
| | $1,944 13 |

"[In pencil]   Paid by notes.
"[In ink]      Paid by notes.
                    "I. Applebaum."

"Q. You say that was the settlement on this entire transaction into these notes.

"A. Yes, sir. * * *

"Q. Can you state, Mr. Currie, how much you paid Mr. Applebaum on account of these notes?

"A. About $1,344.

"Q. Do you know the balance of the last renewal note that you gave Mr. Applebaum?

"A. Six hundred dollars.

"Q. How came you to incorporate in this receipt in full the old account of $819.13?

"A. To get it in tangible shape."

Cross-examination:

"*Q.* You obtained from Mr. Applebaum this property on the 15th day of October, 1903, did you not?

"*A.* Yes, sir.

"*Q.* And you took and used it in your business?

"*A.* Yes, sir.

" *The Court:* You acquired possession under this lease?

"*A.* No, sir.

"*Q.* Where did you get possession of the property, if not from Applebaum?

"*A.* I got possession from Mr. Applebaum.

" *The Court:* Under that agreement?

"*A.* No, sir; there has been a subsequent agreement made after this.

" *The Court:* Where is it?

"*A.* It is in evidence here.   It is a receipt for payment. This was made after that agreement.

"*Q.* So that paper which you hold in your hand is what you claim title to this property on?

" *The Court:* Do you rest your case on the proposition?

" *Mr. Corliss:* I don't rest my case on any one paper in this controversy.

"*Q.* That is the paper under which you claim title to this property which you transferred to Mr. Lloyd?

"*A.* Yes; and the notes which were given.

"*Q.* That paper and the notes?

"*A.* Yes, sir.

"*Q.* And that was made subsequent to this paper?

"*A.* Yes, sir.

"*Q.* And this has nothing to do with it any more?

"*A.* Yes, sir.

"*Q.* That is why you sold the property to A. C. Lloyd?

"*A.* Yes, sir; that is it.

"*Q.* The note specified there has been renewed?

"*A.* Yes, sir.

" *The Court:* Are those notes referred to paid?

"*A.* Yes; two of them.

"*Q.* What is there on the margin there?

"*A.* As per lease executed.

"*Q.* They refer to the lease?

"*A.* Yes, sir.

"*Q.* That note was taken up?

"*A.* Yes, sir.

"*Q.* By you?

"*A.* Yes, sir.

"*Q.* Now, how much was paid by you to Mr. Applebaum in the aggregate on these notes. These notes and checks on account of the notes?

"*A.* $1,344 interest.

"*Q.* Leaving only $600 due?

"*A.* Yes, sir.

"*Q.* And that was embraced in the renewal note?

"*A.* Yes, sir."

Redirect examination:

"*Q.* Do you remember the date of the last renewal note which you gave Applebaum?

"*A.* The last I remember was October, 1904.

"*Q.* For how much?

"*A.* $600.

"*Q.* Look at Exhibit 3, and state whether that is the last note you gave Mr. Applebaum.

"*A.* That is the last note; yes, sir.

"*Q.* These—this bears date October 15, 1904. You had then paid Mr. Applebaum on account of the notes mentioned in Exhibit D, $1,125 on engines and over $200 on the old account? * * *

"*Q.* I understood you to say that this contract or lease was first drawn up, and that, when you came to close the transaction, Mr. Applebaum wanted the notes to include that old debt?

"*A.* Yes; wanted it all put in together; yes, sir.

"*Q.* And that is why they were given?

"*A.* Yes, sir.

"*The Court:* This was given in connection with the notes?

"*A.* It was received as a receipt for the notes.

"*Q.* And the notes and that paper were subsequent to this agreement?

"*A.* Yes, sir. It is all paid except $600.

"*Q.* The $1,125 in this bill receipted by Mr. Applebaum was for the boiler and engine, wasn't it?

"*A.* Yes, sir.

"*Q.* You paid for the boiler and engine by giving these notes at that time?

"*A.* Yes, sir.

"*Q.* And you included with the $1,125 the old debt of $819.13?

"*A.* Yes, sir.

"*Q.* Making an aggregate of $1,944.13?

"*A.* Yes, sir.

"*Q.* These are the four notes which you have referred to in your bills payable book?

"*A.* Yes, sir.

"*Q.* All of which have been taken up?

"*A.* Taken up by renewals or payments."

Recross examination:

"*Q.* Your agreement contained this provision:

"'The party of the second part [meaning yourself] further agrees that, if at the end of said four months he desires to exercise his option of buying said engine as aforesaid, he will pay said party of the first part the sum of $625 in addition to the rental of $500 above agreed upon.'

"I ask you as to whether at the end of four months mentioned in this contract you exercised your option of buying this engine, and so notified Mr. Applebaum?

"*A.* I did on the same day that the agreement was signed.

"*Q.* On the same day?

"*A.* Yes, sir.

"*Q.* So that the provisions of the agreement amounted to nothing after the day that they were executed?

"*A.* No, sir.

"*Q.* Is that right?

"*A.* Yes, sir.

"*Q.* Did you at any time receive from Mr. Applebaum a bill of sale or make an application to him for a bill of sale of this property? Did you or did you not?

"*A.* I did.

"*Q.* When did you get it?

"*A.* October 15, 1903.

"*Q.* Where is it?

"*A.* Here.

"*Q.* Is this it?

"*A.* Yes, sir.

"*Q.* That paper, Exhibit D, is what you mean to swear to the jury is the bill of sale that you got from Applebaum for that machinery on October 15th?

"*A.* Yes, sir.

"*Q.* So that you wish this jury to understand that you base your claim to this engine and your title to it upon the fact that on the day that this agreement of October 15th was made you executed to Mr. Applebaum the four

notes which I have mentioned and read to you, and, after executing them, you received from Mr. Applebaum this receipt for those four notes?

"*A.* Yes, sir.

"*Q.* So that, as I understand your testimony, from that time on—that is, beginning on the same date that Mr. Applebaum sold you this property under this agreement by virtue of the notes which you had given to him and by virtue of this receipt which he gave you for the notes—you claim that this property absolutely belonged to you; that is your claim in this case?

"*A.* Yes, sir.

"*Q.* Well, this agreement of October 15th, which was made at the same time as the receipt here, was entirely abrogated the same day it was made, and that is your claim in this case?

"*A.* Yes, sir.

"*Q.* So you did not consider at any time after October 15th that this agreement was binding upon you?

"*A.* No, sir; not at all.

"*Q.* These papers, Exhibit G, a note for $481.37, Exhibit F, a note for $500, Exhibit C, the agreement of October 15, 1903, and Exhibit D, which is the receipt, were all made at the same time? Whereabouts, in the same office?

"*A.* Exhibit C was made prior to the others. The others were made at the same day in the same office.

"*Q.* Whose office?

"*A.* Mr. Applebaum's office.

"*Q.* Where was Exhibit C made?

"*A.* In the same office.

"*Q.* On the same day?

"*A.* On the same day.

"*Q.* Was there two other notes?

"*A.* Yes; there was three, $481.

"*Q.* When Mr. Applebaum took this property off the scow, you were owing him how much?

"*A.* Six hundred dollars.        *   *   *

"*Q.* What did you say?

"*A.* At the time after we had executed this lease here, after we had executed that, Mr. Applebaum had a bill showing that I still owed him $819. He had it from his clerk, and he suggested or asked me how I was going to pay it, and he suggested putting the whole thing in the form of four notes that way, and we agreed upon the

time that they should be for and that I was going to try to wipe them off then."

The learned circuit judge charged the jury that, the lease, notes, and statement being the same date, the presumption is that they were executed at the same time; also, that the memoranda on the notes indicate an intention to keep the lease alive, thereby reserving title in Applebaum, until a bill of sale should be given by him or the articles fully paid for, and had that effect; further, that although more than the purchase price—i. e., $1,125 —was paid, and the entire claim reduced to $600, Currie did not exercise his right of designating the application of payments to the purchase price of the engine and boiler, and that Applebaum signified his application to be to the old indebtedness, and therefore the engine and boiler were not paid for in full and Currie never acquired title; further, that by the bill of sale of 1905 plaintiff's intestate did not acquire title, for the reason that Currie did not have title. An examination of the testimony of Currie shows a want of detail in regard to the transaction of October 15, 1903. While he states that in his opinion the lease was abrogated by the execution of the notes, and delivery of the statement, Exhibit D, the former involves a question of law, while as to the latter the claim is in contradiction of the instruments themselves. There is nothing to show that all of the papers were not executed and delivered at one time, and as part of one transaction. No testimony indicates more than one interview on October 15, 1903, and no conversation supports the theory that the notes were an afterthought. Moreover, if there were such testimony, the notes and statement were a part of a single transaction, viz., when notes were given and the statement delivered to Currie. The memorandum on the notes referring to the lease was plainly designed to indicate the continuation of the provisions of the lease, and the fact that it was then determined to give the three notes in addition to the note of $500 required by the lease is not inconsistent with such intent, the lease providing for the reten-

tion of title until the articles should be fully paid for. We find no evidence which would have justified the submission to the jury of either the question of title or the question of waiver of defendant's alleged lien. We agree with the trial judge that title to this property was in defendant when the bill of sale was made, unless full payment had been previously made, and as to that his conclusion is correct.

Counsel say that Lloyd was a bona fide purchaser, without notice of defendant's "lien," and cite *Blakeley* v. *Moshier*, 94 Mich. 299, *Au Sable River Boom Co.* v. *Sanborn*, 36 Mich. 358, and *Frick* v. *Hilliard*, 95 N. C. 117, as authorities sustaining a purchaser's claim. Those are all cases where title passed, and the claimant had only a lien. Here the defendant never parted with his title; the agreement being at most a contract for sale. See *Fuller* v. *Byrne*, 102 Mich. 461; *Ryan* v. *Wayson*, 108 Mich. 519; *Perkins* v. *Grobben*, 116 Mich. 172 (39 L. R. A. 815); *Lansing Iron & Engine Works* v. *Wilbur*, 111 Mich. 413.

The judgment is affirmed.

GRANT, C. J., and BLAIR, MOORE, and McALVAY, JJ., concurred.