SIDORSKI *v.* LEPPAK.

1. REFORMATION OF INSTRUMENTS — LAND CONTRACT — LACHES — WAIVER.

   Where vendor's assignee construed an ambiguous land contract as calling for payment in full in five years from its execution which was contrary to vendees' understanding of its import, and before the time claimed for payment in full by vendor's assignee vendees filed their bill for reformation of the contract, it cannot be said that by their inaction they waived their right to said remedy.

2. SAME — ORAL EVIDENCE ADMISSIBLE TO EXPLAIN AMBIGUOUS
   CONTRACT.
   In a suit to reform a land contract, where the language
   of the contract is ambiguous, oral evidence is admissible
   to interpret the language in the light of the surround-
   ing circumstances and the understanding of the parties
   at the time of its execution.

3. SAME—BONA FIDE PURCHASER.
   Where the reading of a land contract would have dis-
   closed that the times and amounts of payment were not
   therein definitely stated, vendor's assignee may not ob-
   ject to the reformation of the instrument to conform to
   the understanding of the parties on the ground that she
   is a *bona fide* purchaser.

Appeal from Wayne; Smith (Guy E.), J., presiding.
Submitted January 10, 1923.   (Docket No. 88.)   De-
cided March 22, 1923.

Bill by Stefan Sidorski and another against Mary
Leppak for the reformation of a land contract.   From
a decree for plaintiffs, defendant appeals.   Affirmed.

*Benjamin F. Lester,* for plaintiffs.

*Leonard F. Kowalski* (*John Kaminski,* of counsel),
for defendant.

MOORE, J.   On the 14th day of August, 1916, the
plaintiffs entered into a contract for the purchase of
a house and lot in the city of Detroit, with John
Mnialkowski.   In the contract is the following:

"This property is situated on the east side of Roby
place and known as 24 Roby place, between Ferry and
Medbury avenues, for the sum of four thousand one
hundred fifty dollars, which the said parties of the
second part hereby agree to pay the parties of the
first part, as follows:   Four hundred dollars, at the
date hereof, and the remaining three thousand seven
hundred fifty dollars in quarterly payments of fifty
dollars or more, payable on the 14th day of the follow-

ing months:  November, February, May and August, in five years from date, with interest on all sums at any time unpaid hereon at the rate of six per cent. per annum till due, and thereafter at the rate of 6 per cent. per annum till paid, payable quarterly from the date hereof.    Said parties of the second part also agree to pay all taxes and assessments, extraordinary as well as ordinary, that shall be taxed or assessed on said premises from the date hereof until said sum shall be fully paid as aforesaid."

Later the contract was assigned to the defendant and the property deeded to her.   The plaintiffs made the payments for five years, except the last one, and tendered that one, and they also paid interest and all taxes and assessments.

Later they received the following letter:

"LEONARD F. KOWALSKI,
"Attorney at Law,
"666 Forest Ave., East,
"Detroit, Michigan.
"To STEFAN SIDORSKI, and

EWA SIDORSKI:   You will please take notice that on the 14th day of August, 1921, I, the undersigned, will demand the payment of the balance becoming due upon the land contract executed between John and Elizabeth Mnialkowski, and yourselves  on  the 14th day of August, 1916, for the premises which you now occupy; the balance becoming due on said date is the sum of twenty eight hundred dollars.

"This demand is made in accordance with the provision in said land contract contained.

"June 3, 1921.        MARY LEPPAK,
"Assignee of  John  and Elizabeth Mnialkowski."

The plaintiffs attempted to make further quarterly payments of $50 each, and interest, but these were refused and the bill of complaint in the case was filed. After the case was put at issue there was a trial upon the merits, and a decree was entered; the material parts, omitting the formal part, read:

"And which said land contract was afterwards assigned by said grantors to Mary Leppak is hereby corrected and reformed to read as follows: 'And the remaining three thousand seven hundred and fifty dollars in quarterly payments of fifty dollars or more, payable on the 14th day of the following months: November, February, May and August, to be extended and renewed in five years from date.'

"And it is further ordered, adjudged and decreed that the injunction heretofore granted in this cause, commanding Mary Leppak, her counselors, attorneys and agents, to desist and refrain from forfeiting or attempt to forfeit the land contract existing between the said Mary Leppak and the said Stefan and Ewa Sidorski in regard to the property located at No. 5546 Roby place in the city of Detroit in the county of Wayne and State of Michigan, so long as they, the said Stefan and Ewa Sidorski, are not in default in the quarterly payments of fifty dollars and such other terms and stipulations as they are required to perform under the said land contract, is made permanent."

The case is brought into this court by appeal.

We quote from the brief filed on behalf of the appellant:

"(1) That the plaintiffs have not sustained the burden of proof cast upon them in actions of this kind.

"(2) That plaintiffs, by their inaction, waived their right to insist upon a reformation of the contract.

"(3) The defendant is a *bona fide* purchaser for value without notice and a mistake in a written instrument will not be corrected against such party."

As to the second of these propositions it is an answer to say that the bill of complaint was filed July 18, 1921.

It is very clear that, if $3,750 of principal was to be paid in quarterly payments of $50, payable on the 14th day of November, February, May, and August, the entire sum would not be paid in five years from date; but it is said the quarterly payments were to

be $50 or more. How much more, and which of them must be for a larger amount? Does the contract say? The answer must be in the negative.

It will be observed also that it is provided, we quote: "In five years from date with interest on all sums at any time unpaid hereon at the rate of six per cent. per annum, till due, and thereafter at the rate of six per cent. till paid, payable quarterly from the date hereof," indicating, we think, that it was not expected that the full amount of the principal would be paid in five years. We think the contract as written is ambiguous.

In *Borden* v. *Fletcher's Estate*, 131 Mich. 220, Chief Justice HOOKER, speaking for the court, said:

"Among the cases supporting the rule permitting the interpretation of language, susceptible to two constructions, in the light of surrounding circumstances, is *Facey* v. *Otis*, 11 Mich. 213, where parol proof of such circumstances was resorted to, to determine whether the contract was made by one party for himself or as agent for another. The case of *North American Fire Ins. Co.* v. *Throop*, 22 Mich. 146 (7 Am. Rep. 638), is another case where parol proof of surrounding circumstances was received to explain the sense in which equivocal language was used. In *Waldron* v. *Waldron*, 45 Mich. 350, the identity of land devised turned upon such evidence of surrounding circumstances; while in the case of *Moran* v. *Lezotte*, 54 Mich. 83, the words 'running to the rear' were made to read 'running towards the rear,' through the force of surrounding circumstances. See, also, *Cook* v. *Brown*, 62 Mich. 479 (4 Am. St. Rep. 870), and *Home Savings Bank* v. *Hosie*, 119 Mich. 123. We have a number of cases which hold that it is competent to show that a name written upon the back of a note was placed there before uttering the note, thereby making one a joint maker who might otherwise be an indorser, and perhaps would be understood to be such from the writing unexplained. *Rothschild* v. *Grix*, 31 Mich. 150 (18 Am. Rep. 171); *Herbage* v. *McEntee*, 40 Mich. 337 (29 Am. Rep.

536) ; *Greusel* v. *Hubbard*, 51 Mich. 97 (47 Am. Rep. 549) ; *Farwell* v. *Ensign*, 66 Mich. 600; *Sibley* v. *Bank*, 41 Mich. 196. See, also, *Eckford* v. *Berry*, 87 Tex. 415 (28 S. W. 937). In *Kendrick* v. *Beard*, 81 Mich. 182, parol evidence was used to determine whether an instrument was intended as a mortgage or conditional sale. For cases permitting evidence of the acts of the, parties under the contract as aids to construction, see 2 Am. & Eng. Enc. Law (2d Ed.), p. 293 ; *Kendrick* v. *Beard, supra.* ˉ Again it is stated in 2 Am. & Eng. Enc. Law (2d Ed.), p. 303, that 'parol evidence may be admitted where it appears from extrinsic evidence that there are two persons or objects or modes of performance corresponding to the terms of the contract ;' and the doctrine is illustrated by cases cited in the note. See, also, *Id.* 297, 298."

In *French* v. *Sparrow-Kroll Lumber Co.*, 135 Mich. 424, Justice CARPENTER, speaking for the court, said:

"We are referred to *Martin* v. *Bell*, 18 N. J. Law, 167. There a certain note was received from a partnership, 'as collateral security for certain notes we held of theirs.' In speaking of this language the court said: 'The words  *  *  * would, in sound legal and grammatical construction, apply to all such notes then held.' But it was held competent in that case to show by extrinsic evidence precisely what notes it was intended should be secured.  *  ˎ *  *

"We are thereby furnished with evidence which enables us to ascribe to the words of this exception their natural and appropriate meaning.

" 'It is a fundamental rule that, in the construction of contracts, the courts may look not only to the language employed, but ˙ to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made.' *Merriam* v. *United States*, 107 U. S. at page 441 (2 Sup. Ct. 540).

"We are bound, therefore, to construe the language under consideration by the aid of this extrinsic evidence."

See *Saginaw Milling Co.* v. *Schram*, 186 Mich. 52 ; *Mullreed* v. *Thumb*, 116 Mich. 444.

Mrs. Sidorski testified in part:

"You knew that you were to pay this contract up in five years at the time you signed this contract, didn't you?

"*A.* Supposed to be signed for another five years.

"*Q.* At the time you signed it, you knew that it was to be paid up in five years?

"*A.* No.

"*Q.* Well, wasn't this contract read to you, and explained to you before you signed it?

"*A.* It was read and explained, and we are supposed to have this contract renewed over again for the next five years, if we want.

"*Q.* After the expiration of the first contract?

"*A.* Yes, sir.

"*Q.* Who told you that you would get five years more after the expiration of this five years?

"*A.* The man that read the first contract off for us.

"*Q.* Who told you that, the man you were buying from, or the party who drew this contract up?

"*A.* Mnialkowski told me.

"*Q.* Mnialkowski is the man who sold to you?

"*A.* Yes, that is the man that sold the house to us.

"*Q.* This contract was explained to you in Polish, wasn't it, before you signed it?

"*A.* Yes, sir.

"*Q.* Have you made any attempt in the last three years to pay up this contract?

"*A.* I don't want to, because I could not."

Mr. Mnialkowski was sworn as a witness for the defendant. His recollection did not seem to be very clear. We quote some of his testimony:

"Before I and these people signed the contract, we have spoken of the payments and they told me that it will probably be hard to pay in five years, but I told them they could draw a mortgage out to the bank, and they could pay in full.

"*Q.* Did they then agree to take this house on those conditions, that you suggested, to pay the contract up in five years?

"*A.* Yes, sir.

"*Q.* Was there any talk between you and these

parties as to an additional five years, after this five years expired?

"*A*. I just told them that after five years, the bank will pay them off, or someone else.

"*Q*. Was there any talk between you and them as to an additional five years, after this first five years? Answer that yes or no.

"*A*. I told them after five years, the bank will pay them off, or something else... I don't remember five years ago.

"*Q*. Do you remember having said that five years, that within five years they could draw a mortgage?

"*A*. Yes, sir; they could get a loan.

"*Q*. Would you have sold this house to them if you were to give them ten years to pay the contract?

"*A*. No, sir.

"*Q*. Why not?

"*A*. Because it was a small payment down, it was only $400.

"*Q*. Being that they agreed to pay up this contract in five years, was that an inducement for you to sell them this property at the small payment of $400 down?

"*A*. They told me they will pay more—not $50 only.

"*Q*. Well, was that one of the inducements?

"*A*. Yes, sir; because they said they will pay as much as they can."

The man who drew the contract was called as a witness by the defendant. He did not remember the plaintiffs. We quote from his testimony:

"That is the land contract made by me and witnessed by me. There was no talk in my office when this contract was entered into of an additional five years. It might have been said that they could not get it down, that they would assume the mortgage, if there would be a mortgage. There was talk about a mortgage in my office. I made a number of these contracts for five years and when it was impossible for people to pay in five years, it was suggested that they could take a mortgage so they were willing to take this contract at five years and if you can't pay the entire balance then take out a mortgage, and it was talked so in this case before these people signed

the contract, nothing was said by Sidorskis that they wanted any additional five years. When I put the phrase, 'In five years from date,' it meant the contract should be paid up in five years."

There is nothing said in the contract that at the end of five years, if the quarterly payments were made, as provided therein, that a deed would be given and a mortgage would be taken, either running to the seller of the house and lot, or to a bank, if the money was obtained from a bank.

The plaintiffs in this case are illiterate Polish people, who signed the contract by making their mark. They also signed the bill of complaint in this case in the same way. It is clear in any view of the testimony that the understanding of the parties was not put into the contract. No one expected the house and lot would be paid for in full in five years. The trial judge had the great advantage of hearing and seeing the witnesses, and he believed the version given by Mrs. Sidorski.

It is urged that defendant is a *bona fide* purchaser without notice and for that reason a decree should be granted in her favor. If we are right in our interpretation of the contract that defense is not available to her and a reading of the contract by her would show the times and amounts of payment were not definitely stated in the contract.

The decree is affirmed, with costs to the appellees.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.