FRED B. WIGGINS v. CHARLES SNOW.

*Conditional sale—Replevin.*

1. A contract of sale which provides that the title to the property shall remain in the vendor until the purchase price is fully paid, but which contains no provision authorizing the vendor to retake possession in case of default, clearly implies that the right of the vendee to possession is dependent upon his making

such payment as provided in the contract, and that, in the event of default and demand, the vendor is entitled to recover possession of the property.

2. In replevin for a machine contracted to be made for the defendant, the title to which was retained in the vendor until the contract price was paid, it appeared conclusively on the trial that the contractor failed to provide certain articles required to make the machine available, which were furnished by the defendant and were seized under the writ. And it is held that the court should have directed a verdict in favor of the defendant as to such articles, the title to the same never having been in the vendor.

3. The effect of certain instructions given to the jury on one branch of the case on their return into court for further instructions is held to have been to ignore instructions upon other points given in the original charge, and to have been error.

Error to Marquette. (Stone, J.) Argued November 19, 1891. Decided December 23, 1891.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*E. E. Osborn,* for appellant.

*McKnight, Humphrey & Grant,* for plaintiff.

GRANT, J. Defendant and one Max Schimmeyer entered into a contract, by which Schimmeyer agreed to construct and deliver to defendant a whirligig complete, with all its appurtenances, for the sum of $1,900, $500 in cash, and the balance in monthly payments of $100 each. The contract contained certain other conditions, immaterial to the issue here. It also contained the following:

"The title in and to said whirligig is to be and remain in said Max Schimmeyer until all the payments, interest mentioned herein, are fully paid."

Defendant paid Schimmeyer something over $900 in cash. Schimmeyer did not fulfill his contract, in that he did not complete the whirligig within the time fixed, nor

furnish all the appurtenances agreed upon. Schimmeyer assigned his interest in this contract to plaintiff, who claimed that defendant was in default of payment, made a demand for the possession of the property, and, upon defendant's refusal to surrender it, brought this action of replevin to recover possession. The learned circuit judge instructed the jury that, if the defendant was in default of payment, the plaintiff must recover. The contract contained no provision authorizing the vendor to retake possession in case of default. It simply retained title in the vendor, and gave the absolute right of possession to the vendee.

The question here presented has never before been directly involved in any case presented to this Court. Where the contract has been held to be one of bailment, and the bailee has violated its terms, it has been held that the bailor might maintain replevin. *Dunlap v. Gleason*, 16 Mich. 158; *Whitney v. McConnell*, 29 Id. 12; *Johnston v. Whittemore*, 27 Id. 463. Where the contract provides for the retention of the title in the vendor, and that he shall be entitled to possession upon any failure to pay any installment, he may maintain replevin. *Preston v. Whitney*, 23 Mich. 260; *Tufts v. D'Arcambal*, 85 Id. 185. Plaintiff relies upon *Adams v. Wood*, 51 Mich. 411; *Edwards v. Symons*, 65 Id. 348; *Hood v. Olin*, 68 Id. 165; *Pratt v. Burhans*, 84 Id. 487.

The question was not involved in *Adams v. Wood*. There no demand was made, plaintiff insisting that his title gave him the right of possession. The Court held that it did not, and that in no event could he maintain the suit until demand.

In *Hood v. Olin* it was held that a vendee under a similar contract could not mortgage the property in hostility to the rights of the vendor.

In *Edwards v. Symons* there was a conditional sale of

a mercantile property and business. The vendee made a general assignment for the benefit of his creditors. The assignee claimed the absolute title, and that plaintiff's remedy was in equity under the assignment statute.

In *Pratt v. Burhans* the title to the goods was to remain in the vendors until paid for or sold in the usual course of business. The vendees violated the contract, and, instead of selling in the usual course of trade, went out of business, and sold and transferred all their property, including that obtained from the plaintiffs in that suit, to a third party. None of these cases presented the question here involved.

In the present case the defendant had not violated his contract in any particular, except in making payment, and as to this he appears to have honestly denied that anything was due. The contract does not expressly provide for the right of possession in the vendor upon failure to make a payment. These contracts are harsh in their provisions, and courts will not extend them beyond their necessary implications. But we must give such contracts their natural interpretation. If vendors in such cases were required to proceed in chancery to foreclose a lien, it would follow that those vendors whose claims were under $100 would have no remedy or recourse to the property, since courts of chancery would have no jurisdiction. The only benefit the vendor could therefore reap would be that the vendee could not sell or mortgage the property, under the decisions of this Court. But it has been held by other courts that the vendee has an interest which he can sell and convey. We think such contracts clearly imply that the right of possession in the vendee is dependent upon his making payments as provided, and that, in the event of default and demand, the vendor is entitled to recover possession of his property. Benj. Sales, § 425, and authorities there cited.

Schimmeyer did not perform his contract, and, in order to obtain the completion of the machine, defendant advanced him $400, and took back from Schimmeyer a bond and chattel mortgage upon the same property to secure the payment. These were executed May 27, 1890. Schimmeyer also failed to provide several articles which his contract required, and the defendant procured these himself in order to make the machine available. Neither Schimmeyer nor his assignee obtained any title to those articles which he had himself provided. The testimony showed conclusively that he did provide certain articles to which Schimmeyer never had title, and as to these the court should have directed a verdict for the defendant. He left it as a question of fact for the determination of the jury whether any such articles were furnished by the defendant. This was error.

It is insisted by the defendant that nothing was due at the time the demand was made and this suit commenced. I think this was a question of fact for the jury, under the proper instruction as to what they should allow for Schimmeyer's failure to furnish the articles above referred to.

After the jury had retired they returned into the courtroom for further instructions, whereupon the following colloquy took place:

"*By the Court:* What do you desire, gentlemen?

"*Foreman of the Jury:* We want— Our object is, if I make myself understood, that the defendant, Snow, should have the machine on payment of $471 and costs.

"*Court:* What do you find the value of the machine to be?

"*Juror:* $900.

"*Court:* Then that is a simple matter of computation. I charged you that if you found that the defendant, Snow, was not in default, you should fix the value of the machine, which you say is $900.

"*Juror:* Well, we consider the defendant, Snow, is in default in payments.

"*Court:* Then your verdict must be for the plaintiff, under the instruction of the court.

"*Mr. Osborn:* May I interrogate the jury in that direction, or will the court do it?

"*Court:* I will do it. I understand you to say that the jury find he was in default of payment.

"*Juror:* Yes, sir.

"*Court:* Then your duty is, gentlemen, to render a verdict for the plaintiff in this suit. The court has so instructed you. It is not for you and me to fix up these things hereafter. If you find he is in default in his payments, there is no other remedy, under the charge of the court, but to find a verdict for the plaintiff, gentlemen. Now you may retire to your room, and put it in form, or render it here."

We think the effect of this charge was to ignore the other instructions which the court had given upon the other points.

For these errors the judgment must be reversed, and new trial ordered.

The other Justices concurred.

------

<div style="text-align:right">

89 481
102 501

89 481
107 537

89 481
s51ᴺᵂ 103
ᴅ152ᵁˢ 363
ᴅ38ᴸᵉᵈ 478
ᴅ14ˢᵒ 586

89 481
145 ¹161
145 ¹170