PERKINS v. GROBBEN.

1. CONDITIONAL SALE—RESERVATION OF TITLE—RETAKING PROPERTY—ACTION FOR PURCHASE PRICE.

Under a contract for the sale of personal property which provides that title shall remain in the vendor until the full purchase price is paid, and that, in case of the vendee's default in the payment of either of three purchase-money notes, the vendor may retake the property, in which case all payments previously made shall be deemed to be for the use, wear, and tear of the property up to the time of retaking, and that the commencement of suit upon the notes shall not be deemed a waiver of the right to retake the property, the vendor is entitled, on the vendee's default, either to retake the property, and treat the payments up to that time as for the wear and tear thereof, or to sue on the notes, and take and retain possession of the property until the judgment is paid; but he cannot retake the property, apply the invoiced price, less a stated per cent. for alleged depreciation, upon the notes, and bring suit for the balance.[1]

2. SAME—VOLUNTARY PAYMENT—GARNISHMENT—ESTOPPEL.

A payment enforced by garnishee process is not a voluntary payment such as will estop the debtor from asserting that the creditor had previously satisfied his claim by taking possession of property on a conditional sale of which the claim was based.

[1] The rights and liabilities of the vendor and purchaser on default of payment on a conditional sale are considered in an extensive note to Cole v. Hines, (Md.) 32 L. R. A. 455.

Error to Kent; Grove, J.    Submitted January 5, 1898.
Decided March 15, 1898.

*Assumpsit* by Willis J. Perkins, doing business as
Perkins & Co., against Louis J. Grobben and William
Hitchcock, upon promissory notes. From a judgment
for defendants on verdict directed by the court, plaintiff
brings error.    Affirmed.

*Wolcott & Ward*, for appellant.

*Pratt & Davis*, for appellees.

MOORE, J.    In 1893 plaintiff received from defendants,
and filled, an order for shingle-mill machinery to the amount
of $2,600.    Defendants paid thereon $800 in cash, and
gave their notes for $300, $700, and $800.    These notes all
read alike, except the amounts and times of payment.
The first one reads as follows:

"$300. No. 1. GRAND RAPIDS, MICH., Aug. 1, 1893.

" June 15, 1894, after date, we promise to pay to the order
of Perkins & Co. three hundred dollars, at Old National
Bank, Grand Rapids, Mich.; value received; with interest
at eight per cent. per annum until due, and thereafter at
eight per cent. until paid.

"This note is one of three notes of even date, given for
part of purchase price of two Perkins & Co. Michigan
Favorite shingle machines.    *    *    *    It is expressly
agreed that the title and ownership of all said property
shall remain in Perkins & Co. until the full purchase price
is paid; and, in case of any default in the payment of this
or any or either of said notes, all said notes shall, at the
option of Perkins & Co., notice of which is hereby waived,
become and be at once due and payable, and said property
may be taken back by said Perkins & Co., and in such
case all payments made, and amounts collected, on this or
any of said notes, shall be deemed to be payments for the
use, wear, and tear of the said property up to the retaking
thereof.    It is further expressly agreed that, upon default
in the payment of this or any or either of said notes, Per-
kins & Co. may commence suit upon the same, which
shall not be a waiver of Perkins & Co.'s title to said prop-
erty, and the same may be retaken by them under this
note, or any of said notes, upon default thereon, as herein-

before provided. It is further agreed that no agreement in regard to said property made after this date, or new notes, collateral or additional security, taken by Perkins & Co., shall in any way waive, transfer, or release their title to said property, it being expressly agreed that the title to said property shall, under all circumstances, remain in Perkins & Co. till this and all of said notes are canceled, delivered up, or assigned by Perkins & Co. After maturity of any of said notes, Perkins & Co. may keep said property insured at makers' expense, premium of such insurance to be added to this note.

"GROBBEN & HITCHCOCK,
"Per William Hitchcock."

Afterwards a chain was returned by consent of the plaintiff. The defendants not paying the notes, the plaintiff took possession of the machinery, and returned it to Grand Rapids. Plaintiff sent a statement to defendants, crediting them with the amount of the machinery taken, at inventory price, less 50 per cent. on account of being depreciated, the statement showing a balance due plaintiff of $1,176, accompanied by a letter reading as follows:

"July 9, 1895.

"GROBBEN & HITCHCOCK,
"Leland, Mich.

"*Gentlemen:* We have received and unloaded the shingle machinery, and carefully inspected the same, and inclose you herewith credit memorandum for the valuation we have placed on same. We also hand you herewith a statement of your account with us to date, after crediting you with the machinery received, as per inclosed credit memorandum. We ask you what is your pleasure in regard to the settlement for balance due? Owing to the ill treatment that we have received at your hands in regard to settlement of your account with us, we do not feel that you are entitled to any extended courtesies in regard to the payment of this balance. We should therefore be pleased to hear from you regarding same by return mail, awaiting the favor of which we remain,

"Very respectfully yours,
"PERKINS & CO.,
"Per Everhart."

Some statement is made in the brief of counsel as to

what became of the machinery after it passed into the
possession of plaintiff, but we are unable to find from the
record what became of it.    The defendants paid no atten-
tion to the letter of July 9, 1895.    In August, 1896, this
suit was begun by plaintiff, who declared upon all the
common counts in *assumpsit*, with notice that under the
money counts he would give in evidence the three notes
in question.    After the testimony was all in, the court
directed a verdict in favor of the defendants, assigning as
a reason that the exercise of the option to take the prop-
erty was a satisfaction of the debt, the judge expressing
himself as follows:

"But the simple question to be determined now is
whether or not the plaintiffs, having pursued one remedy,
namely, by taking the property, resuming possession of it
under their title, have waived all claims to enforce the
notes.    That is the sole question that is to be determined
now.    I think it is proper to consider the other question
in the same connection as bearing upon what should be
the true interpretation of the contract.    Then the contract
further provides that:  'Upon default in the payment of
this or any or either of said notes, Perkins & Co. may
commence suit upon the same, which shall not be a waiver
of Perkins & Co.'s title to said property, and same may
be retaken by them under this note, or any of said notes,
upon default thereon, as hereinbefore provided.'    Now,
there is a stipulation that the plaintiffs may commence
suit upon these notes, and not thereby waive their right
to resume possession under their title.    But the converse
of that proposition is not stated.    It is not provided that
they may take the property, and that shall not be any
waiver of their right to sue and collect upon these notes.
Now, is there not an implied waiver by virtue of the pro-
vision that is contained in it that covers the agreement in
relation to the title to the property and the remedies under
the contract?    Now, the plaintiffs have taken possession
of this property under a contract of this nature, which
provides expressly that the title remains in them, and that
they may take possession on default, and that all pay-
ments previously made shall be applied as compensation
for the use, wear, and tear.    Is it not a proper inference,
and is it not a proper conclusion of law, to say that when
they exercise that right under that contract to take the

property, and apply what has been paid in that way, it determines the whole matter?

"The law does not favor the enforcement of two remedies. The law recognizes the right of a party to secure his claim by as many securities as he can get'; but it does not recognize his right to enforce more than one to complete satisfaction. I think the true interpretation of this contract is that the parties reserved the right to commence a suit, and provided that it should not be a waiver of their right to take the property, but they did not reserve any right to sue and collect upon these notes after repossessing themselves of the property. And to allow that to be done would be to allow them to take the property, which the law conclusively presumes, under their contract, was full payment, I think, of any balance that might be due after such time as the plaintiffs might see fit to make the application of prior payments for the use, wear, and tear of the property. Here they had a contract that might have been enforced five months before, and applied the payment on the wear and tear and use of the property. They saw fit to let it run five months, and then, when they took the property, that application is made. 'Up to the time of the retaking' is the language of the contract. Then, by the very terms of the contract, the money paid prior to the retaking went to the plaintiffs as compensation for the use, wear, and tear of the property. They selected the time of taking it. They might have taken it earlier, and the fact that they took it so much later I think is quite conclusive that they deemed that the prior payments were adequate for the use, wear, and tear of the property up to that time, and that the property at that time was of sufficient value to pay the balance of the claim."

The case is brought here by writ of error.

Some controversy arose about the question of estoppel because of a payment of $60 claimed to have been made by defendants after the letter of July 9, 1895. That payment resulted from a garnishee process. The circuit judge was of the opinion that it was not a voluntary payment by defendants, and did not affect the other questions in the case. We think he was right, and shall not discuss that feature of the case further.

It is the contention of the plaintiff that, notwithstanding he has received back the machinery after it had been used

about 60 days, which was billed at $2,600, and has received a payment of $800, he is still entitled to a judgment for the face of the notes and interest, and he urges that this would not be unjust, because the parties have so agreed, and they must be presumed to know the effect of their agreement; and it is also said:

"That the proper construction of the contract is that, under such circumstances, plaintiff cannot lawfully retain the property on being tendered his money, and that, therefore, the mere retaking of the property cannot be treated (as was done by the trial court) as an application of all prior payments towards the use, wear, and tear, etc., of the machinery, and as an election of remedies so as to prevent his maintaining an action on the notes."

This was not the construction put upon the contract by the plaintiff when he credited the defendants with the inventory price of the machinery taken back, less 50 per cent. for depreciation, and wrote them July 9, 1895:

"We also hand you herewith a statement of your account with us to date, after crediting you with the machinery received, as per inclosed credit memorandum. We ask you what is your pleasure in regard to the settlement for balance due? Owing to the ill treatment we have received at your hands in regard to the settlement of your account with us, we do not feel that you are entitled to any extended courtesies in regard to the payment of this balance."

There was nothing in this letter indicating that plaintiff recognized any obligation to return the property upon a tender of the amount due upon the notes, or that he was holding it for the purpose of enforcing the lien he had upon it for the amount of his debt.

Does the law give the contract any such construction as is now claimed by counsel? Counsel do not call our attention to any cases directly in point, but cite *Hays* v. *Jordan*, 85 Ga. 741; *Preston* v. *Whitney*, 23 Mich. 260; *Johnston* v. *Whittemore*, 27 Mich. 463; *New Home Sewing Machine Co.* v. *Bothane*, 70 Mich. 443; *Thirlby*

v. *Rainbow*, 93 Mich. 164; *White* v. *Solomon*, 164 Mass. 516 (30 L. R. A. 537); and other cases,—claiming that the reasoning employed by the court tends to support their contention. So far as these cases are in point at all, we think they are against the position of the plaintiff. In the last-named case Chief Justice Field wrote an opinion, which was joined in by two of the other judges, in which he said:

"The contract, I think, is, in effect, a contract for a conditional sale, and the intention is that the title shall not vest in the defendant until the price is paid. If the price is not paid according to the terms of the contract, the plaintiffs are authorized to retake the manikin without being accountable to the defendant for any of the money paid by him on account of the price. If the plaintiffs exercise this right of retaking the manikin into their possession because the price is not paid, they have both the title and the possession, because they have never parted with the title. What, then, is the rule of damages under such a conditional contract of sale, when the vendee refuses to receive the article, and it is returned to and retained by the vendor? I think that the construction to be given to the contract is that, if the defendant does not pay the price according to the contract, the plaintiffs may retake the manikin from the possession of the defendant, and retain what he has paid on account of the price, or they may leave the manikin in the possession of the defendant, and sue him for the installments of the price which remain unpaid; but the plaintiffs cannot collect the whole price, and also retake the manikin. They cannot hold the title to the property, and also recover the price of it."

It is not agreed in the contract that, if the property is retaken, and the payments made up to that time are treated as payments for the use, wear, and tear of the said property, that the vendor may also sue for the amount due on the notes. After the vendor has taken possession of the property, the contract does not give the vendees any further interest in it. The character of the contract, and the results which may be worked out under it, are not such as to make it desirable to read into it provisions it

does not contain.  The contract provides for two ways of enforcing it.  The plaintiff might sue on the note, and retain the property until the judgment was paid, or might retake the property, and treat the payments up to that time made as payments for the use, wear, and tear of the machinery, but he cannot do both.  The plaintiff has taken possession of the property as the owner thereof.  What have the defendants had as the consideration of the note ?  They acquired no title or interest in the property, and could not until they paid the notes.  They could not call the plaintiff to account for a disposition of the property, if he has made any, because they had no interest whatever in it, having made default in the payment of the notes, the vendor having exercised his right, under the contract, to take possession.  The defendants have simply had for the notes the use of the property, and for that use they have paid the $800, which the contract gives the vendor the right to so apply.  The vendor is not entitled to the title and possession of the property, and to be paid for it also. *Seanor* v. *McLaughlin*, 165 Pa. St. 150; *Bailey* v. *Hervey*, 135 Mass. 172; *Earle* v. *Robinson*, (Sup.) 36 N. Y. Supp. 178; *Campbell, etc., Manfg. Co.* v. *Hickok*, 140 Pa. St. 290; *Scott* v. *Hough*, 151 Pa. St. 630; *Hine* v. *Roberts*, 48 Conn. 267; *Green* v. *Sinker, Davis & Co.*, 135 Ind. 434.  See, also, *Vaughn* v. *McFadyen*, 110 Mich. 234.

Judgment is affirmed.

The other Justices concurred.