## HICKMAN *v.* CHANEY.

1. VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—CONTRACTS
—FORFEITURE.

On a bill for the specific performance of a land contract, where
it appears that the contract was subject to forfeiture by rea-
son of default in payments, and defendants led complainants
to believe that they would waive the forfeiture and deed upon
payment of the amount due, they cannot avoid performance
after complainants had acquired the vendee interest in the
contract and tendered the amount due thereon.

2. SAME—CONTRACTS—ASSIGNMENTS—IDENTIFICATION—CONSIDERA-
TION.

Where certain assignments of a land contract express all that
is necessary to transfer the assignors' rights, they are none the
less valid for want of dates and an expression of considera-
tion; since all of the parties thereto are made defendants and
none of them denies the sufficiency of the assignments or the
validity of complainants' title.

3. SAME—CONTRACTS—PAROL CONTRACTS—EVIDENCE—STATUTE OF
FRAUDS.

On a bill for the specific performance of a land contract, evi-
dence examined, and *held*, that the agreement to convey on
the payment of a certain sum after complainants should ac-
quire the vendee interest, did not rest in parol so as to be
void under the statute of frauds.

4. SPECIFIC PERFORMANCE—CONTRACTS—AMOUNT DUE—TENDER—
SUFFICIENCY—INTEREST.

On a bill for the specific performance of a land contract which
had been declared forfeited for default in payments, where
complainants had tendered an insufficient amount to cover
the amount due at the time it was tendered, they should be
charged with interest up to the date of the decree.

5. PLEADING — CROSS-BILL — FAILURE TO ANSWER — DEFAULT —
RULE.

On a bill for specific performance, defendants filed an answer
in the nature of a cross-bill, and complainants did not file a
formal answer to the allegations therein, and defendants
caused complainants' default to be entered. The allegations
of the cross-bill were practically no more than denials of

the allegations of the bill. *Held*, that the cause having been heard upon proofs on all disputed questions, this court, in order to do substantial justice and avoid doing violence to the rule and settled practice under it, will enter an order nunc pro tunc setting aside said default.

Appeal from Kalkaska; Chittenden, J. Submitted November 11, 1908. (Docket No. 155.) Decided December 21, 1908.

Bill by Elmer E. Hickman and Charles E. Neff against Delno Chaney, William E. Chaney, and others, for the specific performance of a land contract. From a decree for complainants, defendants appeal. Modified and affirmed.

*Ernest C. Smith*, for complainants.

*Chauncey C. Jenks*, for defendants.

HOOKER, J. The evidence in this case shows:

(1) That on March 22, 1905, Delno Chaney and George E. Pray contracted in writing to sell to Robert Bell six 40-acre parcels of land for $400.

(2) Subsequently Bell assigned his right and title to said contract to Samuel Bricker by a writing stating as much upon the back of the original contract.

(3) On July 29, 1907, by a writing upon the contract, said Bricker assigned all of his right, title, and interest in and to said contract and the land therein described to the complainants.

(4) On November 18, 1907, the foregoing instruments were recorded in the office of the proper register of deeds.

(5) On December 11, 1905, a contract was made between Samuel Bricker and Judd Tenney and Robert Sipes by which Bricker agreed to sell and Tenney and Sipes agreed to buy subject to said contract, the land mentioned for $600, and Bricker thereby "sold his interest in and to the same" to them, agreeing that upon payment he (Bricker) would execute and deliver to them a good and sufficient warranty deed of the premises, etc.

(6) By writing indorsed thereon, dated September 22, 1906, said Tenney assigned all of his interest in said contract as to a portion of said land to Sipes.

(7) By a similar writing indorsed thereon, dated July

27, 1907, Sipes assigned all his interest in said contract to complainants.

(8) On June 11, 1906, Tenney and Sipes made a contract with Flanagan and Burns to sell and convey to them all of said land, except the portion described in the assignment from Tenney to Sipes, by a contract similar to that given by Bricker to Tenney and Sipes.

(9) Subsequently, and on July 27, 1907, Tenney and Sipes assigned to complainants by writing upon said contract all of their interest in said lands.

(10) Burns and Flanagan by writing dated April 1, 1907, assigned to Samuel Lambert all their right and title to a contract made between them as parties of the second part, and Judson Tenney and Robert Sipes as parties of the first part.

(11) By a writing not dated, Samuel Lambert assigned all his right and title to the within contract to the complainants, giving a description of the premises.

(12) At some time after Chaney and Pray made the contract first mentioned, Pray sold and transferred his interest in the lands described therein to William E. Chaney.

From the foregoing it appears that at the time the suit was tried complainants had succeeded to all outstanding rights under defendants' contract, so far as the instruments mentioned were adequate to convey them.

Before purchasing the various interests mentioned, one of the complainants saw William Chaney at Torch Lake, Mich., for the purpose of ascertaining whether it would be prudent for them to purchase the same. He was informed that there was about $35 overdue upon the contract, but he was encouraged to make such purchase, and given to understand that defendants would consider his proposition to pay at once the full contract price remaining unpaid. He sought to ascertain the amount due, and was promised that defendant William Chaney would ascertain as soon as he got home and write him. This was in July. Chaney did not do this. Complainants wrote him on August 1st as follows:

"WARSAW, INDIANA, August 1, 1907.
"WILLIAM E. CHANEY,
          "Kalkaska, Mich.
"*Dear Sir:* Kindly state the least amount you will

accept for the transfer of your contract and warranty deed to the land in Wilson Township ·sold by you to Samuel Bricker. Also abstract showing clear title to the same. Please state full amount due on contract also full amount required to pay off your claim. You will remember we saw you a few days ago at which time you said that a sum less than the full amount would be accepted if we desired to pay it before the time provided in the contract. This will help us to decide on a deal with the other parties, and, in that case, we may pay you the cash for your claim. Let us hear from you by return mail and oblige,

"Yours respectfully,
"Hickman & Neff."

Defendant's answer was:

"Rapid City, Aug. 7, 1907.
"Hickman & Neff,
"Warsaw, Indiana.
"Gentlemen: I have your letter of August 1, 1907, asking me the least amount which I will accept for the transfer of contract and warranty deed to the land in Wilson township, sold to me by Samuel Bricker. Will say in answer that my contracts and paper, etc., are in safety deposit box at Kalkaska and being at the lake where you met me, it will be inconvenient to answer your letter fully until I have examined our contract. I, however, expect to be in Kalkaska within the next few days, at which time I will examine same, and let you know the least amount we will take.

"Yours truly,
"William E. Chaney."

September 10th complainants wrote:

"Warsaw, Indiana, September 10th, 1907.
"Mr. W. E. Chaney,
"Kalkaska, Michigan.
"Dear Sir: We wrote to you on August 1st, stating our Mr. Hickman had seen you, and that you stated you would give us some reduction on the interest if we would take up the Bricker contract and take the deed. You wrote us you would be in Kalkaska in a few days, and would let us know. Your letter was dated August 7th, and as yet we have heard nothing from you, and as the time is near for another payment, we would like to know what you will do before that time so that we can make

our arrangements accordingly. If the discount will justify us to do so, we prefer to clean it up, and, as you stated you would give us a discount if we would so do we would like to know what you wish to make it and we will act accordingly, or trade it as it is. Thanking you for an early reply, we remain,

"Yours truly,
"HICKMAN & NEFF,
"Per C. E. NEFF."

To this letter no answer was made. Mr. Neff then went to Kalkaska and saw Chaney. Subsequently, and on October 24th, complainants again wrote:

"WARSAW, INDIANA, October 24, 1907.
"Mr. W. E. CHANEY,
"Kalkaska, Michigan.
"*Dear Sir:* When our Mr. Neff had a conference with you about a month ago you stated you would have the deed to that land made out the following week and send it to the Kosciusko bank of this city where we were to pay $238.00 for the same being the amount due on contracts that we hold for the land. We have been disappointed in not receiving the deeds as agreed upon. We would like to hear from you, as we wish to pay the amount due on contracts, or pay preferably the amount we agreed upon and get our deed. Thanking you in advance for a reply, we remain,

"Yours truly,
"HICKMAN & Neff,
"Per. C. E. NEFF."

On November 5th they received the following by mail:

"To Messrs. HICKMAN & NEFF,
"Warsaw, Indiana.
"Please to take notice that a certain land contract made on the 22d day of March, 1905, wherein and whereby Delno Chaney and George E. Pray agreed to sell to one Robert Bell, for the consideration of four hundred dollars upon certain terms of payment therein stipulated and agreed upon, the following described lands situated in the township of Wilson county of Kalkaska and State of Michigan, to wit the south half of the northwest quarter; and the north half of the northeast quarter; and the southwest quarter of the northeast quarter of section sixteen of town twenty-seven north, range eight west (ex-

cepting and reserving therein certain railroad rights therein fully specified), and in which contract we understand you have some interest derived from the said Robert Bell, is hereby declared forfeited by reason of default in the payments therein specified and agreed upon and of default in other terms and agreements therein contained on the part of said Robert Bell. And you are hereby further notified that the undersigned are the sole owners of the title to said lands and that they now, and hereafter, do and will claim full right of possession of said lands as though said contract had not been made and will regard and treat any further interference with said land or the timber thereon, by the said Bell, or his assigns, or any person or persons claiming by, through or under him, as a trespass.

"Dated this 25th day of October 1907.

"WILLIAM E. CHANEY.
"DELNO CHANEY."

Defendants' first refusal to make the deed was on or about October 26th, when they offered to pay back $191. On November 17th complainants tendered $240 and subsequently $250, which sum was paid into court. We think it unnecessary to state at length the oral testimony. Suffice it to say that, as the letters indicate, the defendant William Chaney placed obstacles in the way which prevented immediate payment of arrearages and prompt payment of all unpaid amounts provided for in the contract, at the same time concealing the evident intention of ultimately declaring the contract forfeited.

The defendants' brief contains a statement of the questions which their counsel consider to be involved. They are as follows:

"(1) A charge of fraud and misrepresentation on the part of the defendants, put in issue by a positive denial in the answer, the alleged fraud and misrepresentation consisting in certain promises to execute a deed and failure to do so, etc.

"(2) The complainants' ownership of the vendee interest in the contract which they, claiming as vendees, seek to have specifically enforced against the vendors. The defendants contend (a) that the complainants never as a

matter of fact or law acquired the vendee interest in the contract in question, this proposition involving the question of the validity of three purported assignments; and (b) that, even had the complainants been shown to be the owners of such vendee interest, the defendants had no knowledge nor means of knowledge of such fact, and were, under the circumstances disclosed by the evidence, justified in refusing to execute a deed to the complainants, this proposition involving the question of the good or bad faith of complainants in neglecting and refusing to produce any evidence to defendants that they were the owners of such vendee interest while demanding a deed of the lands.

" (3, incidentally) The question of an oral agreement to accept a certain sum as the amount remaining unpaid on a contract, and to execute a deed therefor, and the validity of such an agreement, if made, under the statute of frauds.

" (4) The legal right of a vendee in default to demand a deed on tender after notice of forfeiture.

" (5) The question of affirmative relief on a showing made under an answer in the nature of a cross-bill to which no answer was filed, and default for not answering, entered."

We shall therefore discuss no others.

1. Promise to deed. The defendants contend that the testimony does not show a promise to deed the premises on payment. We are convinced that at the first interview between the parties complainants were justified in believing that defendants would waive a forfeiture and deed upon a subsequent payment of the purchase price after complainants should have purchased the contract, and it was arranged that defendants should forward a proper deed to a bank in Indiana to be delivered on payment of $238. Their conduct indicates that they soon after determined (if they had not already done so) to avoid performance of their contract if they could, and purposely concealed such design until complainants had made their purchase.

2. Complainants' title. Counsel contend that defendants were under no obligation to make a deed to any one

but Bell until they had satisfactory evidence that the parties demanding the deed were the sole and bona fide owners of such vendee interest.    They say that defendants did not have satisfactory evidence, and that the evidence fails to show that complainants were such owners. We will dismiss the first part of the proposition with the remark that we are convinced that defendants did not want such evidence.    This was not given as a reason during the negotiations, and we believe they had no doubt of complainants' title, as evidenced by their offer to pay them $191 of the consideration received.    Moreover, they could easily have ascertained what has been proved had they made an effort in good faith to ascertain what title complainants had.    But they contend that complainants did not *show title*.    They attack the writing of Flanagan and Burns and that of Lambert—the former that it does not identify the contract assigned to them; the latter, that it purported to be attached to a contract assigned when it was not.    We insert copies of these two instruments:

"PRESSEY'S CAMP, 4–1–07.
"This is to certify that I have for value received sold all my right and title to contract made and entered into between Judson Tenney, Robert Sipes parties of the first part, and Samuel Flanagan and Fred Burns parties of the second part to Samuel Lambert.
"FRED BURNS.
"SAM FLANAGAN."

"For the sum of fifty-four dollars ($54.00) I hereby assign all my right and title in the within contract to Elmer E. Hickman and Charles E. Neff of Kosciusko county, Indiana.    The same being the north half ($\frac{1}{2}$) and the southwest quarter of the northeast quarter, and the northwest quarter of the southeast quarter of section sixteen (16) township twenty-seven (27) north, range eight (8) west.
[Signed]    "SAM LAMBERT."

We have no hesitancy in saying that the former sufficiently identifies the contract referred to, while, if the latter does not upon its face, it is made apparent when considered in the light afforded by the former assignment,

and the contract that it describes. In addition to the above, counsel attack the assignment made by Bell. We insert it:

"I hereby assign my rites and title to the above contract to Samuel Bricker.

"ROBERT E. BELL."

The attack is made to rest on the want of proof of consideration. A somewhat lengthy argument is made to show that it is void under the statute of frauds upon the theory that—

"An assignment of a land contract * * * is a contract for the transfer or sale of an interest in lands, which must be in writing, and must leave nothing to rest in parol."

Ergo the consideration must be expressed. A similar claim is made regarding the Flanagan and Burns assignment and their assignment to Lambert. We think it unnecessary to enter upon an elaborate discussion of these questions. We may sufficiently answer them by saying that these assignments express all that is necessary to transfer the assignors' rights under the contracts that they severally describe, and they are none the less valid for want of dates. As to consideration, the assignor had a right to assign without consideration if he chose to do so, and the defendants in this cause have no right to raise the question. All of the persons hereinbefore named are parties to the bill, and none of them deny the sufficiency of these instruments or the validity of complainants' title.

3. The oral agreement. This has been alluded to. We will add that the complainants' rights do not rest on a claim that they were entitled to a deed on payment of $238, or that defendants' oral promise to deed on any terms constituted a new contract. It is enough to say that this and other evidence is sufficient to justify the refusal to enforce a forfeiture.

4. Complainants' rights after notice of forfeiture. Counsel say:

"We are unable to find any authorities which hold or indicate that a vendee may, after notice of forfeiture, as a matter of right, tender the amount due and demand a deed. It is undoubtedly true that a court of equity may permit him to do this under certain circumstances where the equities are clearly with him, and upon an equitable basis; but he cannot as a matter of right discharge himself from all responsibility by tendering or paying simple interest, and thereby become entitled to a deed where the other party has declared the contract forfeited for the default."

The above concession is sufficient justification under the proofs in this case for refusing to enforce a forfeiture if there is no other obstacle. But there is such. Under the testimony in the case, it should be said that the default of the assignors of complainants was waived, and that the latter have not been in default since, as they made every reasonable effort to pay arrearages, and have been prevented by the inequitable conduct of the defendants. We do not, however, agree in the holding of the learned circuit judge that defendants should be required to deed on payment of $238. The complainants' bill avers that they are and have been at all times ready to pay the amount actually due, and, while two tenders were made, neither was quite large enough to pay the amount due at the respective times when they were made. Therefore they should pay interest up to the date of the decree below, which was April 9, 1908, and which apparently amounts approximately to the sum of $240.61, with interest thereon from March 22, 1905. The exact amount can be determined on the settling of decree if counsel cannot agree upon it.

5. Complainants' failure to answer defendants' cross-complaint. Counsel for defendants attempted to avail themselves of the rule permitting a defendant the benefits of a cross-action upon filing a proper answer. They prayed for the following affirmative relief, viz.:

(1) That the contract with Bell be declared forfeited and void.

(2) That the rightful owners of the vendee interest be fixed to whom defendants may safely repay such portion of the contract price of said lands as the court shall decree to be equitable and just for them to repay.

(3) That the amount of the contract price heretofore paid be determined, and that the amount thereof which defendants shall repay upon cancellation of said contracts shall be fixed, and those entitled to the same determined.

Complainants filed a replication as follows:

" The replication of the complainants to the answers of the defendants Delno Chaney, William E. Chaney, and George E. Pray. The said complainants say that notwithstanding the answer of the said defendants they are entitled to the relief prayed for in the bill of complaint."

Subsequently counsel for defendants Chaney caused complainants' default to be entered for want of an answer. It is now contended that under Chancery Rule 11 the allegations of the answer in the nature of a cross-bill must be taken as true. See *Coach* v. *Kent Circuit Judge*, 97 Mich. 565; *Messenger* v. *Peter*, 129 Mich. 95. Practically the allegations of the answer amount to little more than a denial of the allegations, and, while counsel for complainants might prudently have filed a formal answer, the failure to do so is not necessarily fatal to his claim, and, the cause having been heard upon proofs on all disputed questions, we will by an order nunc pro tunc set aside said default, and treat the cross-claims as answered by a denial in all essential particulars. This will do substantial justice, and avoid any possibility of doing violence to the rule or settled practice under it.

Except as modified in the manner above indicated, the decree of the learned circuit judge will be affirmed by a decree entered here. The complainants will recover costs. 3 Comp. Laws, § 11256; Chancery Rule 22, and note.

MONTGOMERY, OSTRANDER, MOORE, and McALVAY, JJ., concurred.