DETROIT TRUST CO. *v.* WORMER MACHINERY CO.

Equity—Sales—Adequate Remedy at Law—Conditional Sale
—Trusts—Retaking Property by Seller.

> Defendant sold, under a contract reserving title to the
> property, a quantity of machinery to a motor car manu-
> facturing company which later became insolvent. Before
> proceedings in bankruptcy were begun, defendant
> possessed itself of the machinery upon the default of the
> purchaser in making the stipulated payments. A resale
> of the property brought more than the unpaid balance,
> and the trustee in bankruptcy filed a bill for an account-
> ing, claiming a substantial equity in the funds obtained
> at the resale, asking the court to construe the contracts
> and charging that possession was taken by force and
> without the consent of the insolvent. *Held,* that the
> averments of the bill charging a forcible seizure, etc.,
> were not sustained by the evidence, that complainant had
> an adequate remedy at law and no trust existed in the
> proceeds obtained from the sale.

Appeal from Wayne; Codd, J. Submitted June 3,
1913. (Docket No. 16.) Decided September 30,
1913.

Bill by the Detroit Trust Company as trustee in
bankruptcy of the Marvel Motor Car Company
against the C. C. Wormer Machinery Company for
an accounting and other relief. From a decree for
complainant, defendant appeals. Reversed.

*Anderson, Rackham & Wilcox,* for complainant.

*Denton Guinness,* for defendant.

When complainant was appointed receiver of the
Marvel Motor Car Company, which was in August,

1907, it learned that certain machinery which the motor car company had purchased on contract from defendant had been removed from its plant by the defendant, and addressed to defendant a letter of inquiry, which was answered under date September 4, 1907, as follows:

"You state in your letter that you have in your possession the original contracts which are self-explanatory. The Marvel Motor Car Co. defaulted in its payments and in pursuance of the terms of the instruments we repossessed ourselves of the machinery and the Marvel Motor Car Company's rights therein were forfeited."

Thereafter, September 17, 1907, the Marvel Motor Car Company was declared bankrupt and complainant was elected trustee. On or before October 1, 1907, defendant disposed of the machinery. Two years later, complainant filed its bill in the circuit court, in chancery, for the county of Wayne, charging, among other things, that the Marvel Motor Car Company had a substantial equity in the said machinery, that defendant had denied its demand for an accounting for the same and its interest and equity in the same and in the proceeds of the sale thereof, and praying that an account be taken, construction of the contracts according to which the machinery was delivered to the said motor car company, and a decree requiring defendant to pay to it such sum as upon accounting should be found to represent the interest of the said Marvel Motor Car Company therein. It is charged in the bill that defendant repossessed itself of the machinery without demanding it, over the objections and without the consent of the Marvel Motor Car Company, and forcibly. The cause was heard in open court upon pleadings and proofs (an answer and replication having been filed) before the late Judge Rohnert, who died before making any decision. Thereupon Judge Codd, by consent of parties,

examined the testimony and rendered an opinion and a decree favorable to complainant.

The Marvel Motor Car Company executed four instruments, pursuant to each of which machinery was delivered to it by defendant, and pursuant to which defendant claimed the right to repossess itself of the machinery and to hold the same and all proceeds of the sale of the same as its own. The dates and prices stated in these instruments are:

| | |
|---|---:|
| November 24, 1906 | $3,015 40 |
| January 2, 1907 | 1,660 90 |
| February 28, 1907 | 768 70 |
| May 7, 1907 | 1,066 52 |
| Total | $6,511 52 |

The Marvel Motor Car Company had paid upon the purchases $3,650.52, and for the unpaid balances defendant held its 90-day notes. The sale of the machinery by defendant produced the sum of $5,284.07. Allowing defendant for the cost of taking possession the sum of $175.26, a commission of 15 per cent. for making the sales, and the balance of the purchase price $2,861, there was in its hands, as surplus, $1,481.49. Upon this sum the court allowed complainant as interest $310.65, entering a decree that defendant pay complainant the sum of $1,792.14, as of February 28, 1912.

The same provisions are found in each of the instruments executed by the Marvel Motor Car Company, and, excluding the list of machinery described therein, one of them is here set out:

"Received of C. C. Wormer Machinery Co. of Detroit, Wayne Co., Mich.: * * * Which the undersigned agree to safely keep, carefully use, and not remove from the city of Detroit, county of Wayne, State of Michigan. Also to keep the same insured in the sum of two thousand dollars for the benefit of said C. C. Wormer Machinery Co., in such company as they shall approve; also, to pay all taxes on said

property during the continuance of this contract, and return same to the said C. C. Wormer Machinery Co., at its warehouse, Detroit, Michigan, free of charges and unincumbered, on demand, unless payments are made as below provided. And said undersigned further agree to pay to said C. C. Wormer Machinery Co., for said property, the sum of three thousand fifteen and 40/100 dollars with interest, from this date, at the rate of ·six per cent. per annum, to wit: One thousand fifteen and 40/100 dollars in cash upon the signing of this instrument, and the remainder as follows: One note dated Nov. 24, 1906 at 90 days for $2,000.00. At maturity of this note upon payment of one-half and interest a renewal note may be given for the balance at 90 days.

"It is hereby understood that the within contract is assumed by the Marvel Motor Car Co. according to the conditions of certain promissory notes of even date herewith, executed by the undersigned.

"It is understood and agreed that on payment of amount stated above, including notes, renewals and interest, together with any sum or sums which the said C. C. Wormer Machinery Co. may have paid for insurance or taxes on said property, by reason of the failure or neglect of the undersigned to keep the same insured, or pay the taxes thereon as above provided, then the said C. C. Wormer Machinery Co. shall execute to the undersigned a bill of sale of said property.

"It is expressly understood and agreed that the title to said above-described property shall remain in said C. C. Wormer Machinery Co. until the full sum herein mentioned, and all promissory notes and all renewals of notes, shall be paid. That said notes or renewals thereof shall not be considered as payments until such notes or renewals are actually paid in money; that said property shall not become a fixture by being placed in any mill or other building, or by being annexed in any manner to the realty; and that the rental value thereof is six hundred dollars per month, and which said sum the undersigned hereby agree to pay to the said C. C. Wormer Machinery Co., and if all of the several payments herein before provided for shall not be paid at the time and in the manner above provided the said C. C. Wormer Machinery Co. is authorized and empowered, at any time,

to enter upon the premises, upon which said property is located, and take possession of the same either upon a violation of any of the agreements herein contained, or if the undersigned shall become an insolvent, or a bankrupt, or if any judgment be taken against the undersigned and the same shall not be paid or otherwise fully provided for to the satisfaction of the said C. C. Wormer Machinery Co., or if the said C. C. Wormer Machinery Co. should at any time during the continuance of this contract deem itself insecure; and any and all money already paid upon said machinery and property shall be considered as having been paid on account of the rental value and for the use of said property."

In the second instrument the rental value of the machinery was agreed to be $300, in the third $100, and in the fourth $300, a month. There was testimony concerning the rental value of machinery, the depreciation in value of new machinery after use, testimony tending to prove that the sums fixed as rental value for the machinery were intelligently agreed to by the persons acting for the purchaser, and that an exceptionally favorable resale was made of the property by defendant. The undisputed testimony is that if defendant had postponed a sale 60 days or more the selling price and the sums paid upon the contracts would not have equaled the original contract price.

Ostrander, J. *(after stating the facts).* The charge that forcible possession of the property was taken by defendant and that objections thereto were made by the Marvel Motor Car Company is not proved. On the contrary, it appears that one note fell due on August 7th, the day the removal of machinery was begun; that notice of a meeting of creditors of the Marvel Motor Car Company, to be held August 8th at 2 o'clock p. m., had been given; that defendant had information of the precarious financial condition of the Marvel Motor Car Com-

pany, had been told by the manager of the Marvel Motor Car Company that it was not possible to meet the obligations of the concern; that no objection was made by representatives of that company to the retaking of the property by defendant. It was all retaken before 2 o'clock p. m., August 8th.

The testimony compels the conclusion that on August 7, 1907, when removal of the machinery was begun, all parties in interest had concluded that only a miracle could save the Marvel Motor Car Company and that it was proper for the defendant, before further complications had arisen, to repossess itself of the machinery. Indeed, there was an understanding between the defendant and the manager of the Marvel Motor Car Company that if the miracle was worked the machinery should be available to carry on the business. It was held for some time by defendant, awaiting developments. It is said in the brief for complainant:

"The contracts when the machinery was resold were still subsisting; defendant could not declare them void and does not pray here to have them declared void or its rights defined as in *Hickman* v. *Chaney*, 155 Mich. 217 [118 N. W. 993]. This surplus was therefore created by an unauthorized appropriation of property excusing vendee from a tender of the balance due as by its own act defendant was not in a position to redeliver the machinery."

It is further said in the brief:

"Complainant submits that under these facts and conclusions the retaking of the property and a resale created a fund which in equity imposes a trust relation between the parties hereto; that possibly the trust so imposed might give to complainant the entire sum realized on the resale but that complainant does not here urge, recognizing the rule that 'he who comes into equity must do equity,' and only asking that the equitable surplus be decreed to be due complainant. Counsel has made an elaborate research

of the cases and fails to find a case where vendor has been shown to have a surplus under the circumstances of this case but herewith appends a synopsis of Michigan cases indicative of the conviction of the court that the vendee might have relief if the facts so warranted."

The Marvel Motor Car Company had no interest in the machinery, certainly none which was not defeasible by demand of possession or by voluntary surrender of possession; it had, at most, after the machinery was reclaimed, a personal claim against defendant. *New Home Sewing Machine Co.* v. *Bothane,* 70 Mich. 443 (38 N. W. 326); *Ryan* v. *Wayson,* 108 Mich. 519 (66 N. W. 370); *Wiggins* v. *Snow,* 89 Mich. 476 (50 N. W. 991); *Thirlby* v. *Rainbow,* 93 Mich. 164 (53 N. W. 159); *Wood* v. *Kaufman,* 135 Mich. 5 (97 N. W. 47); *Perkins* v. *Grobben,* 116 Mich. 172 (74 N. W. 469, 39 L. R. A. 815, 72 Am. St. Rep. 512); *McBryan* v. *Elevator Co.,* 130 Mich. 111 (89 N. W. 683, 97 Am. St. Rep. 453). Rejecting, as we do, all argument based upon the idea of an unauthorized retaking of the property, we necessarily reject the conclusions referred to in the foregoing excerpt from complainant's brief.

There is no trust fund. And there is no money due to complainant, unless, when the property was retaken, some of the money which had been paid to defendant by the Marvel Motor Car Company ought to have been returned to it. That defendant made a good second sale of the machinery concerns only the defendant; just as it alone would have been concerned if a bad sale had resulted in a loss in the entire transaction. It owed to the Marvel Motor Car Company, or its receiver, no duty to sell the machinery. It is clear, of course, that after defendant reclaimed the machinery it had both the machinery and $3,650.52 which the Marvel Motor Car Company had paid on account of the machinery. Whether

it had the right to keep all or some of this money is the question suggested by the facts, as we find them. The money which had been paid was less than the sum which the vendee agreed to pay as rent. If the agreement to pay rent is enforceable, defendant had the right to keep all of the money. To determine this question, there was no occasion to resort to a court of equity. If defendant has money which in equity and good conscience belongs to the complainant, it is recoverable in an action of assumpsit. The contracts require no construction. They either are or are not enforceable according to their plain terms. There are apparent reasons for referring the matter to a court of law.

The decree of the court below is reversed, and a decree will be entered here dismissing the bill of complaint, with costs of both courts to defendant.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.