DETROIT CAVALRY *v.* RANNEY.

1. VENDOR AND PURCHASER—JOINT TENANCY—ASSIGNMENT.
    An assignment of all the interest of one of several joint
    owners or vendees to another interested, reciting the ex-
    istence of an indebtedness, and providing that the prop-
    erty be platted and sold at the best obtainable price,
    passed an equitable title to the real estate, and the as-
    signor retained no interest under the land contract.

2. SAME—EQUITY—CLEAN HANDS.
    It was, however, an untenable objection that complainant
    did not come into court with clean hands, because it had
    violated certain building restrictions on neighboring lots,
    which were subject in the contract only to the limitation
    that no building should be erected thereon nearer than
    20 feet from the street line, and which did not appear
    to have been violated.

Appeal from Wayne; Hally, J.  Submitted April 10,
1916.  (Docket No. 51.)   Decided December 21, 1916.

Bill by the Detroit Cavalry against Frederick T.
Ranney, the Whitney Realty Company, Limited, the
Collingwood Land Company, and Floyd C. Williams
for the specific performance of a land contract and to
quiet title.  From a decree for complainant, defend-
ants Collingwood Land Company and Williams appeal.
Affirmed.

*McPherson, Dunn & Maun* (*Allan Campbell,* of
counsel), for complainant.

*Charles Flowers,* for defendant Ranney.

*Moloney & Mendelsohn,* for appellants.

BIRD, J.  In the year 1912 Frederick T. Ranney sold
to complainant upon contract certain lots lying partly
in the city of Detroit and partly in the township of

Greenfield, and described as: Lots 1, 2, 3, 4, 166, 167, and 168 of Ranney's boulevard, subdivision of lots A and B of plat of southerly 46 acres of quarter section 26, 10,000-acre tract, according to the plat thereof. Upon payment being tendered and a conveyance demanded of the lots, it was discovered that the estate of Robert Thuner claimed some interest therein, whereupon this bill was filed to compel a specific performance of the contract, and to remove the cloud from the title. The claimed interest of the Thuner estate appears to have arisen in this way: In 1894 Ranney and Thuner were owners in fee of certain real estate, of which the lots in question were a part. A mortgage was held thereon by David Whitney, Jr. Subsequently the mortgage was discharged by Whitney, and Ranney and Thuner conveyed the fee to him, and he in turn gave them a contract of repurchase. Being in poor health and pressed for funds, Thuner afterward made the following assignment of his interest to Ranney:

"For and in consideration of the sum of one ($1.00)' dollar, I hereby sell, assign and set over unto Frederick T. Ranney all my right, title and interest in and to the above contract.

"Dated, Detroit, Mich., January 14, 1909.
[Signed] "ROBERT THUNER [L. S.]."

On the same day Ranney and Thuner executed a contract, which recited the fact that they had purchased upon contract from David Whitney, Jr., certain lands, and that Thuner had assigned his interest therein to Ranney. It further recited the fact that Thuner was indebted to Ranney in the sum of $4,788.85, and that they were indebted to the Whitney estate on said contract in about the sum of $27,000. It then provided that in consideration of the assignment of Thuner's interest to Ranney, Ranney should make haste in platting the property, and that he should

place it upon the market and sell the same for the best price obtainable therefor, and the proceeds therefrom should be disposed of as follows: *First*, the indebtedness to the Whitney estate should be paid; *second*, the expenses of platting the property and placing it upon the market and selling the same should be deducted from the common fund; *third*, that Thuner's indebtedness to Ranney should then be paid wholly out of Thuner's share of the profits; lastly, it was provided that the balance remaining should be divided equally, and Thuner's share paid to him. Later Robert Thuner died, leaving a large number of creditors. The debts were proved against the estate, and application was made by the administrator to sell Thuner's interest in the land, which was the subject of the assignment to Ranney, and the same was sold under order of the probate court and the defendant Williams was the purchaser thereof, who afterward conveyed his interest to the Collingwood Land Company. The complainant claims that the probate sale was of no force because Thuner had no interest in the lands after making the assignment to Ranney. The defendant Collingwood Land Company claims that the conveyance by Ranney and Thuner to Whitney, and the contract to repurchase, construed together, constituted a mortgage, and consequently the title to an undivided half of the property remained all the while in Thuner, and that the assignment of his interest in the contract did not carry title to Ranney.

1. In 1894 Ranney and Thuner were tenants in common of the premises in question. To secure their debt to Whitney they deeded the premises to him and took back a land contract, with a provision that in case of default their rights therein should be foreclosed in chancery. The deed and contract read together undoubtedly constituted a mortgage. This being true, the equitable title remained in Ranney and Thuner.

While the title stood in this way Thuner sells and assigns his interest in the contract to Ranney, and they, at the same time, execute a contract, which provides what disposition shall be made of the consideration. The assignment, considered in connection with the contract, leads to the conclusion that it was intended to pass the equitable title to the land, with the right to control the legal title. The real consideration for the assignment was a full and adequate one. Thuner was to receive his full share of the profits, whatever sum they might yield, and this fact leads to the conclusion that the title was intended to be conveyed. This view is further strengthened by the fact that Thuner recorded the contract as a deed and not as a mortgage, and later when he sold a half interest thereof he described it as a "one-half interest in his share of the profits," etc.

But counsel argue that the assignment carried nothing with it save a half interest in the contract. What interest was that except the right to pay Whitney's debt and have the lien discharged? If Ranney paid the debt and had the lien discharged, he would be the loser, unless he could reimburse himself out of the profits, and he could not do that unless he could sell and convey the lots. We think it is clear that when Thuner executed the assignment, he thereby intended to convert his incumbered title interest into a contract right for a participation of profits. See *Hickman* v. *Chaney,* 155 Mich. 217 (118 N. W. 993).

2. The further point is made that complainant does not come into court with clean hands because it has violated certain building restrictions on the lots in the vicinity by erecting its armory on lots 166, 167, and 168. The only building restriction which appears in the contract for lots 166, 167, and 168 is that "no building shall be erected thereon nearer than 20 feet from the street line." It does not appear that this

restriction has been violated; neither does it satisfactorily appear that complainant had knowledge of other restrictions which are claimed to have been known and observed by other lot owners in that vicinity before it purchased the lots. The chancellor who heard the cause was of the opinion that the assignment was intended to convey all of Thuner's interest in the lots, and we agree with him.

The decree of the trial court must be affirmed. Complainant will recover its costs in this court against the Collingwood Land Company. No other costs will be allowed.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.