DETROIT SAFE CO. *v.* MYER.

1. REPLEVIN—DEMAND—LAWFUL POSSESSION.

   Where defendant lawfully came into possession of a safe under contract of sale, a proper demand on defendant on behalf of plaintiff for its surrender was necessary before defendant's possession was unlawful and an action of replevin could be maintained.

2. SAME—EVIDENCE—DIRECTED VERDICT.

   Where the demand for possession was made by plaintiff's salesman on defendant's son, without any showing being made that the salesman had any special authority to receive payment or bring the action, and it is conceded that no demand was made of defendant himself, the court below properly directed a verdict for defendant on the ground that no proper demand for possession had been made.

3. EVIDENCE—TRIAL—PRESUMPTIONS.

   In an action of replevin, evidence of conversation between plaintiff's salesman and defendant's son, at the time alleged demand for possession was made, was properly excluded; in the absence of explanation as to the nature of the conversation, it was presumptively incompetent.

Error to Saginaw; Kendrick, J. Submitted January 7, 1916. (Docket No. 59). Decided July 21, 1916.

Replevin by Detroit Safe Company against Frank J. Myer for possession of a safe sold on contract. Judgment for defendant on a verdict directed by the court. Plaintiff brings error. Affirmed.

*A. Elwood Snow,* for appellant.

*E. L. Beach* and *Alfred F. Myer,* for appellee.

PERSON, J. This is an action of replevin brought to recover possession of a safe delivered by plaintiff

to defendant under contract of sale. The contract is in the form of an order, signed by defendant, and reads as follows:

"5—13—1914.

"Detroit Safe Co.,
    "Detroit, Mich.

"You will please ship me when notified one of your No. 60 fireproof safes with corner chest with combination lock. For this safe delivered on board of cars at Saginaw will pay you $225.00, terms cash. If change of color is decided on must have 4 weeks' notice. Paint French Grey. Name, Myer Bros. And in consideration of the delivery of said safe, it is hereby agreed that you do not part with, or relinquish your claim, nor the title to said safe until the agreed price of it shall be fully paid to you; that if any default shall be made in the payments of the notes or the price as herein agreed, or if prior to said payment in full, the safe shall be removed from the possession of the undersigned, without your written consent, you or your agents may, without process of law, take possession of, and remove said safe, and for the use thereof, retain any payments that may have been made thereon. This order is given subject to your approval, and in consideration of above price. We hereby agree not to countermand this order until a reasonable time has been given for such approval, but to receive and pay for the same, as above stated. No agreement of any kind not stated in this order, shall become a part of this contract. The receipt of a duplicate hereof is hereby acknowledged.

"Salesmen are not allowed to collect for us. Any payment made to them will be at your risk.

"If special cabinet work is required, make diagram on back of this order.

"F. J. Myer. [Signature.]
"Saginaw.   [City or Town.]
"              [County.]
"Mich. [State.]
"[Give full shipping directions here.]
"Name of Salesman. Doherty."

The safe was delivered without payment of the purchase price, but why that was done is not shown in the record.   This action was finally brought because of defendant's failure to make payment after several statements of account had been sent him.   The affidavit was made by one Robert E. Doherty, who describes himself therein as salesman for plaintiff.   Mr. Doherty was the only witness sworn upon the trial; and the court directed a verdict for defendant upon the ground that no proper demand for the safe had been made.

So far as appears from the record, the safe came lawfully into the possession of the defendant.   This was conceded throughout the trial.   And having come lawfully into his possession a proper demand on behalf of plaintiff for its surrender was necessary before the defendant's possession could be made unlawful and an action maintained to recover the property. *Adams* v. *Wood,* 51 Mich. 411 (16 N. W. 788) ; *Wiggins* v. *Snow,* 89 Mich. 477 (50 N. W. 991) ; *Anderson* v. *Pendl,* 153 Mich. 693 (117 N. W. 326).

It was conceded on behalf of plaintiff that no demand was made of Frank J. Myer, the defendant. Mr. Doherty testified that he did not find him, and went to Myer Bros. Jewelry Store, where he had a conversation with R. G. Myer, his son, and a member of the firm of Myer Bros.   The defendant was not, himself, a member of the firm.   Mr. Doherty testified that the safe was in the building occupied by the Myer Bros., at the time of his conversation with R. G. Myer, and says:

"I came up here and went to the store and demanded of Mr. R. G. Myer, and asked him what he was going to do in regard to paying for the safe, and he told me he had nothing to do with it, that I should see his lawyer, and then I went to the lawyer's office, and he wasn't in, and then I went back again and told them

I would be back after dinner, and if they didn't make some settlement I would take action to get the safe."

This is all the testimony there was of a demand for the possession of the property. It was not shown that R. G. Myer, the son, had possession of, or control over, the safe, nor that he represented his father, the defendant, in any way. There was no testimony that Myer Bros. were using the safe, or that they had anything to do with it. According to Mr. Doherty's testimony R. G. Myer, when asked what he was going to do in regard to paying for the safe, said that he had nothing to do with it. There is no explanation as to why the safe was in the building occupied by Myer Bros. So far as appears by the record the defendant may have kept it there for his own use and convenience. The simple fact that the order for the purchase of the safe required the name, "Myer Bros.," to be painted upon it does not, without further testimony, tend to show that it had been turned over to the firm, or that the firm had anything to do with it. Nor does the fact, that the diagram for the interior of the safe was marked in one corner "O. K. R. G. Myer" tend to show, without explanation, that any one other than the defendant himself had possession or control of the safe. It further appears by the terms of the order that none of the plaintiff's salesmen were authorized to collect or receive payment for it. Mr. Doherty did not testify that any special authority to receive payment, or bring the action, had ever been given him. Under the circumstances it must be held that plaintiff failed to show a proper demand, and that the circuit judge was correct in directing a verdict for the defendant.

During the examination of Mr. Doherty by counsel for plaintiff he was asked to state, "What conversation did you have with this Mr. Myer?" meaning Mr. R. G. Myer, defendant's son. The question was objected

to and excluded. This is assigned as error. The facts hereinbefore stated show that the court was right in sustaining* the objection. Counsel for plaintiff made no explanation as to the nature of the conversation which he proposed to show, and presumptively it was incompetent.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.