MYERS *v.* SAWVEL.

REPLEVIN—DEMAND OF ONE IN LAWFUL POSSESSION PREREQUISITE.
Where one comes into lawful possession of personal property demand for its surrender is a prerequisite to an action in replevin.

Error to Isabella; Hart (Ray), J. Submitted February 7, 1922. (Docket No. 92.) Decided July 20, 1922. Rehearing denied November 2, 1922.

Replevin by William C. Myers and another against Clinton Sawvel and another for the possession of certain stock, farm tools and machinery. Judgment for plaintiffs. Defendants bring error. Reversed.

*F. H. Dusenbury* and *Romaine Clark,* for appellants.

*Dodds & Dodds,* for appellees.

STEERE, J. Plaintiffs, who are husband and wife, owned an improved and valuable farm consisting of over 230 acres, located in Coe township, Isabella county, which they had been offering for sale, and on February 25, 1920, sold under a land contract to defendant Clinton Sawvel at an agreed price of $47,000. The land contract was prepared upon a blank form containing the customary provisions, including insurance and tax clauses, the purchaser being required to pay all taxes assessed against the property when due for 1920 and subsequent years. The terms of payment were $500 on signing the contract, $4,500 on March 15, 1920, when possession would be given, and $1,500 on March 1, 1921, with stated deferred payments thereafter until full purchase price was paid.

The first two payments amounting to $5,000 were timely made and possession given on March 15, 1920, together with certain personal farm property then upon the place which is the subject of this litigation. The parties made no mention of any personal property in the written contract and are now at variance as to what their oral agreement or understanding was.

It is undisputed that defendant Robert Sawvel, son of Clinton, brought the contracting parties together. He was a married man of mature years employed as a field man for a beet sugar company, and in the line of his employment visited plaintiff's farm to learn if he would raise sugar beets the ensuing season. Myers replied he would not as his farm had been up for sale since the previous August and he had listed it with certain parties for that purpose. In this interview he explained at some length the terms on which he had listed and would sell the place, saying amongst other things, as he testified, that "the farming tools was to go with it also." Robert testified that during the conversation Myers asked him if he could not find a buyer for the farm, as he was traveling around the country a good deal, to which the latter replied in substance that he might, that when he later met Myers in the village of Shepherd and again broached the subject of raising beets the conversation turned to his selling the farm and Myers said: "If you find me a buyer for my farm at (stating a price) I will turn over the personal property to you for your trouble;" that following this he interested his father in the proposition, took him to see the place and eventually the contract for sale of the farm shown here followed.

The father, Clinton Sawvel, testified that he did not claim to own the personal property involved in this litigation, except two or three items which had come to him with the farm, but was given to under-

stand during their negotiations and at the time of making the contract that the personal property delivered to him with the possession of the place went to his son Robert as a commission for finding a purchaser, that at the time he was looking over and negotiating for the place Myers showed him the personal property, stating "he had told Robert he would give him this stuff, or that he should have this stuff, if he found a buyer for the farm." This Myers denied, claiming in substance that he had always said the personal property went with the farm, and it was transferred to defendant Clinton Sawvel as a part of that deal, that he told him when the bargain was consummated "what was to go with it at that time so he would understand it thoroughly. I believe it was the day we closed the deal."

Clinton Sawvel, after being put in possession of the farm and property which was left there, occupied the premises for about a year. He failed to pay the taxes of 1920 assessed against it, and made no further payments upon the purchase price, when steps were successfully taken to recover possession of the farm because of his default. Of this he says:

"I made up my mind to throw up the place before Myers commenced legal proceedings for its recovery, just before the contract was defaulted I decided not to pay the taxes. * * * At the time this suit was brought I did not claim to have possession of the personal property at all."

He excepted a certain horse he mentioned which was taken under the writ of replevin.

On getting possession of the farm plaintiffs brought this action in replevin to recover possession of the personal property mentioned in the writ which had been taken elsewhere and was in possession of defendant Robert Sawvel. Both defendants testify, and plaintiffs admit, that before the writ of replevin issued

no demand was made upon them for surrender of the property replevied. At conclusion of the testimony defendants' counsel moved the court to direct a verdict of not guilty for the following reasons:

"*First.* No demand was made on any of the defendants prior to the issuance of the writ.

"*Second.* Because the plaintiffs had not established title or right to the possession of the property in question at the time of the commencement of suit."

This the court refused. Plaintiffs had verdict and the usual judgment in replevin was thereafter entered in their favor. Although Myers testified in general terms that the personal property on the farm went with it and states he so told defendants, his own testimony qualifies that statement. He later says he told them "what he would put in with the farm," tells of going there after he had given possession to get some things he had left, and on cross-examination testified:

"I do not remember stating to Robert Sawvel that in case he found a buyer I would give him the personal property on the farm. I recollect selling a team of horses to Robert Sawvel. There was no conversation at that time had with him. I gave him the price on the horses and he had an opportunity to pick out what he wanted. Sawvels bought part of my cattle. Robert bought them in the end. The cattle and horses he paid for and he is the man I talked with about the stock."

Clinton Sawvel paid $5,000 on his contract of purchase and was in possession of the farm about a year. Just when or under what circumstances he was dispossessed of it this record does not clearly disclose, but from his statement that he made up his mind to throw it up just before Myers commenced legal proceedings suggests that he either surrendered possession or was ousted about the time or shortly after further payment of $1,500 fell due on March 1, 1921.

Plaintiffs commenced this action of replevin on March 7, 1921, without making any demand of any one for the property seized as is conceded.   The property seized was then in Robert's possession with his father's knowledge and consent, the latter making no claim of ownership to any of that taken under the writ except one horse.

The general rule is well settled in this State that where one comes into lawful possession of personal property demand for its surrender is a prerequisite to an action in replevin.   2 Abbott's Mich. Practice (2d Ed.), p. 1581; 1 Stevens' Mich. Practice, p. 257; *Campbell* v. *Quackenbush,* 33 Mich. 287; *Adams* v. *Wood,* 51 Mich. 411; *Wiggins* v. *Snow,* 89 Mich. 477; *Anderson* v. *Pendl,* 153 Mich. 693; *Detroit Safe Co.* v. *Myer,* 192 Mich. 215; *Stuber-Stone & Co.* v. *Ault,* 215 Mich. 355.

In *Anderson* v. *Pendl, supra,* a third party claimed ownership of property surrendered to him by one who came lawfully into possession of it, under a claimed but disputed contract of purchase and demand before replevin was held necessary.

It is plaintiffs' theory that no demand was required because this personal property was sold conditionally with and under like terms as the farm, that default and forfeiture of the farm operated as default and forfeiture of the personal property on it, and plaintiffs were thereby entitled to possession of it forthwith without further notice or demand.   No mention of personal property appears in the written contract for sale of the farm.   Whatever it may have been, the agreement as to it was oral.   To read into this land contract a verbal contract as to that unmentioned personal property is going far and adding much by inference to a written instrument, if not varying its terms.   But even conceding the contention and assuming the personal property could and should

be read into it, under the drastic provision for summary proceedings to recover possession of the property in case of default found in that executory land contract written notice of forfeiture, or demand, is a prerequisite to legal proceedings for re-possession.

The judgment is reversed, with costs to defendants, and the case remanded for such further proceedings in harmony with this opinion as the trial court may determine.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.